[Crim. No. 4234. First Dist., Div. Two. July 12, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILSON
SCOTT, Defendant and Appellant.

Cecil Hunt, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Michael R. Marron, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, J.—Defendant Wilson Scott appeals from a conviction of assault with intent to commit rape in violation of Penal Code, section 220, and from the order denying his motion for a new trial. The latter order is no longer appealable (Pen. Code, § 1237).

The evidence may be summarized as follows: In March 1961, the prosecutrix, Mary Waller, was employed as a waitress at the Bella Napoli restaurant in Oakland, California. At approximately 4:45 a.m. on March 19, 1961, she completed her shift and prepared to drive to her home in Hayward. Since it was just becoming daylight, Mrs. Waller drove with her headlights on. She proceeded south on the Nimitz Freeway until she reached the Whipple Road turnoff into Hayward. Shortly after turning onto Whipple Road, Mrs. Waller noticed another automobile move up close behind hers and begin flashing its lights from high to low beam. The other car then overtook Mrs. Waller and drew up almost parallel to her car in an apparent attempt to force her off the road. At this point, Mrs. Waller looked over to the other car and saw that the driver was a male Negro. She also

noticed that the car had portholes in the fender, and that the front license plate was dented. The other car then dropped back slightly and began to make contact with the left rear side of Mrs. Waller's car. When the other car continued to bump and shove from the rear, Mrs. Waller lost control of her car, which veered across the road and rolled completely over. When her car came to rest upon its wheels, Mrs. Waller looked up and saw that the other car had stopped and that the man had gotten out and was running toward her. Mrs. Waller managed to lock the car doors before the man reached her car and began rattling the door on the passenger side. The man then said, "I am going to kill you, bitch," and proceeded to smash the right front window of the car with his fist. As he was reaching in through the window to open the door, Mrs. Waller got out on the driver's side and ran to the rear of her car. The man then chased her around the car, caught her, and began to hit her about the face and mouth. Mrs. Waller was able to observe that the man wore a large ornate ring. The man then threw her to the ground, threatened her with a drawn knife, and raped her. Although Mrs. Waller pretended to have fainted, she kept one eye open and saw that the man was a Negro with large freckles or pockmarks on the right side of his face, a mustache, and a nose longer and thinner than was characteristic of his race. When another car approached, the man got up, ran to his car, and drove away.

Subsequently, at approximately 5 a.m. on January 6, 1962, Mary Schissler was driving south on the Nimitz Freeway between Oakland and San Jose. Shortly after turning off the freeway onto Mowry Boulevard, she observed a car following close behind her and flashing its lights from high to low beam. The car continued to follow her as she moved into the slow lane and then back into the fast lane. Upon turning around and looking back, Mrs. Schissler was able to see that the driver of the car was a Negro. She at first thought that the driver might be a woman because she observed that the figure had something dark, which might have been hair, about the back of the neck. She was also able to see that the car had two portholes on the front fender, and a banged-up front license plate with a broken chrome holder. The car appeared to be yellow and white.

As the car attempted to pull alongside, Mrs. Schissler put her car into passing gear and managed to pull ahead. The other car remained close behind her as she swerved her car

back and forth across the road. Upon approaching the Mowry-Fremont intersection, Mrs. Schissler saw a police car and began honking her horn and blinking her lights to attract attention. As the police car pulled over to the side, Mrs. Schissler's pursuer turned right on Fremont. She then told the police officer what had happened and was instructed to remain at the Mowry-Fremont intersection. The officer radioed the description to other patrol units in the area and drove down Fremont in the direction taken by Mrs. Schissler's pursuer. As Mrs. Schissler waited at the intersection, she saw her pursuer come back down Fremont, turn left on Mowry, and head back toward the freeway. She was able to observe that the car was actually green and white although it appeared to be yellow because of the fluorescent lighting on the road.

Officer McGuire, who had received a radioed description of Mrs. Schissler's pursuer, had reached Mowry at an intersection closer to the freeway than the Fremont intersection. He saw a car which appeared to be yellowish and which otherwise matched the description speed past on Mowry. He followed the car onto the freeway and succeeded in stopping it approximately a mile down the freeway. The driver was the defendant Wilson Scott.

When Mrs. Schissler was brought to the scene, she was able to identify the car and the banged-up condition of the front license plate. She also saw that the dark object which she had thought to be hair was actually a hat which the defendant was wearing on the back of his head with the brim turned down.

On January 29, 1962, Mrs. Waller was taken to the Fremont courthouse to view the defendant, whose picture she had already tentatively identified. As she drew up to the courthouse, Mrs. Waller noticed the defendant's car parked nearby and commented to the officer with her that it looked like the same green and white color as the car of her attacker. Upon being taken into the courthouse, Mrs. Waller identified the defendant as her assailant. She later identified a ring taken from the defendant as the ring she had noticed at the time of the attack. Paint samples taken from the left rear fender of Mrs. Waller's car were found to be similar to those taken from the defendant's car. It was also found that tire tracks left at the scene of the attack could have been made by the defendant's car.

The defense of defendant was an alibi. Defendant testified

that he had spent the evening of March 18, 1961, visiting a round of bars in Oakland and had not returned home until after 6 o'clock on the morning of March 19. He denied ever having seen Mrs. Waller prior to January 29, 1962, and further denied that he had been in the vicinity of Whipple Road on the morning of the attack. He also testified that the ornate ring identified by Mrs. Waller was not in his possession during March 1961 because he had given it to a friend, Mrs. Riley, as security for a loan she had made him. In regard to the incident of January 6, 1962, the defendant testified that he had not been on Mowry Boulevard that morning and that he was not even sure of its precise location. He stated that he had driven from Oakland to San Jose in the early morning hours of January 6 and had attempted to locate a tavern called the Cherry Inn. When he was unable to find the tavern, he continued to drive around San Jose for some time and then headed back toward Oakland. He was stopped by a police car while driving north on the Nimitz Freeway at a moderate rate of speed. Other witnesses corroborated the defendant's story of his whereabouts on March 19, 1961, and of the loan of the ring.

 Appellant's first contention is that the trial court committed prejudicial error in admitting over his objection evidence of the January 6, 1962, incident with Mrs. Schissler. Appellant asserts that the relevance of this testimony was far outweighed by its tendency to degrade him in the eyes of the jurors and to demonstrate his disposition toward crime. This contention is without merit.

 As a general rule, evidence is admissible in a criminal case if it tends logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense. (*People* v. *Peete* (1946) 28 Cal.2d 306, 315 [169 P.2d 924].) Evidence of other crimes is admissible for this purpose even though it may connect the accused with an offense not included in the charge. (*People* v. *Peete, supra.*) Although proof of this nature must be received with caution, it is for the trial court in the exercise of its judicial discretion to determine whether the probative value of such evidence is outweighed by its possible prejudicial effect and to admit or exclude it accordingly. (*People* v. *McCaughan* (1957) 49 Cal.2d 409, 421-422 [317 P.2d 974].) Where the identity of the defendant is in issue, evidence that he

committed other crimes or attempts under circumstances which were remarkably similar to the one charged may be admitted for the purpose of showing that the defendant did in fact commit the crime charged. (*People* v. *Cavanaugh* (1955) 44 Cal.2d 252, 265-266 [282 P.2d 53].)

In the instant case, appellant denied the attempted rape and offered the defense of an alibi. Under such circumstances, it is obvious that the sole issue determinative of appellant's guilt or innocence was the question of his identity as Mrs. Waller's assailant. Since appellant was not apprehended by the police until almost ten months after the attack on Mrs. Waller, it was vital for the prosecution to establish that Mrs. Schissler's pursuer was in fact the man responsible for the earlier offense charged in the information. The great similarity between the *modus operandi* on both occasions thus provided a vital link in the People's case, since it tended to identify appellant as the perpetrator of the crime charged. Both Mrs. Waller and Mrs. Schissler were pursued at about 5 a.m. over roads leading from the Nimitz Freeway in the same general area. Both women described the pursuing car as being green and white in color, with round portholes in the fender, and a dented front license plate. Both women described the single occupant of the car as a male Negro, who at first attracted their attention by flashing his lights from high to low beam and who subsequently followed close behind them and attempted to pull up alongside them. Since the *modus operandi* was strikingly similar on both occasions, it is apparent that the evidence showing that appellant was Mrs. Schissler's pursuer tended to prove that he was also responsible for the earlier attack on Mrs. Waller. Under such circumstances, it cannot be said that the trial court abused its discretion in determining that the probative value of the evidence outweighed its prejudicial effect. Moreover, the court minimized the possibility of such prejudice by admitting the evidence solely on the issue of identity, and by so instructing the jury.

Appellant's second and final contention is that the court erred in refusing to admit certain records containing Mrs. Waller's statements to the police relevant to the identity of her assailant. The records in question were unsigned statements compiled by the police from notes which they had taken of Mrs. Waller's description of her assailant. Counsel for appellant sought to utilize these reports for the purpose of showing that certain of the identifying features to which

Mrs. Waller testified at the trial were never mentioned in her previous statements to the police. Appellant's counsel at first used these reports in the course of cross-examining Mrs. Waller and was able to establish that these reports contained no mention of the fact that appellant was wearing an ornate ring, that he had pockmarks or freckles on his face, that his car had portholes in the fender, or that the license plate was dented. Appellant's counsel then offered the reports themselves into evidence. Upon objection by the prosecution, the trial court ruled that the reports were inadmissible on the ground that they were not signed by Mrs. Waller and there was no indication that they purported to contain all of the information which she had given to the police.

This ruling was clearly correct. Code of Civil Procedure, section 2052, provides that a witness may be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony. Unless the proffered evidence is actually contradictory, however, the trial court is justified in refusing to admit it. It is settled that a witness may not be impeached by showing that he omitted a fact or stated it less fully at a prior proceeding unless his attention was called to it at that time and he was then asked to testify concerning the very facts embraced in the testimony which he gave at the trial. (*People* v. *Ambrose* (1957) 155 Cal. App.2d 513, 520-521 [318 P.2d 181]; *People* v. *Reimringer* (1953) 116 Cal.App.2d 332, 341-342 [253 P.2d 756].) In the instant case, no such showing was made. To the contrary, Mrs. Waller testified that she had in fact told the police of each of the identifying features which she described at the trial. Her testimony in this regard was corroborated by Detective Welch, who stated that Mrs. Waller had told him of several identifying features which he had included in his preliminary notes but had not carried over into the reports subsequently prepared by him. Under such circumstances, the reports were clearly inadmissible for the purpose of impeaching Mrs. Waller's testimony. In any event, appellant could not conceivably have been prejudiced by this ruling in view of the fact that his counsel had already brought out on cross-examination each of the descriptive details which were omitted in the statements prepared by the police.

For the reasons above stated, the appeal from the order denying a new trial is dismissed, and the judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.