[Crim. No. 2500.   Fourth Dist., Div. One.   Oct. 5, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARDO SOTO, Defendant and Appellant.

Joseph E. Schmitt, Public Defender, and John D. Duddy, Deputy Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendant appeals from a judgment imposing sentence following his conviction by a jury of a sale of heroin.

The sale was made on January 14, 1963. Defendant was not apprehended until December 22, 1965. The information was filed on February 14, 1966. It was stipulated that defendant's absence from the State of California had tolled the statute of limitations.

At about 7:40 p.m. of January 14, 1963, Leo Banda, an agent of the California Bureau of Narcotic Enforcement, bought about one ounce of heroin for $375 from a man who was introduced to Banda as "Lalo." Banda was introduced to Lalo as "Mike." The meeting, prearranged by an intermediary, took place on a bridge over the All-American Irrigation Canal known as the Wisteria Check Point, approximately two miles west of Calexico in Imperial County and about 75

yards from the International Border. After introducing "Mike" and "Lalo," a third man who had arrived with Lalo left. Banda said to Lalo that he understood Lalo had some merchandise for sale; Lalo said he had, and produced a rubber container in which was tan powder. Banda made payment of $375 fixed by Lalo as the price per ounce, received the package of powder, and was told that Lalo could obtain up to a kilo more. The meeting lasted five or six minutes.

Banda's identification of defendant was positive when Banda next saw defendant after the arrest in December 1965.

Ernest Halcon, an undercover agent for the California Bureau of Narcotic Enforcement, sat in his parked car on a Calexico street at about 7:30 p.m. of December 22, 1965. Defendant came to the car and sat down in the front seat next to Halcon, who was introduced as "Jesse." Defendant answered to the name of "Lalo." The third man, who made the introductions, then left. Halcon said to defendant, "Lalo, I understand that you and my cousin Mike have done business before." Defendant replied, "Yes, we have." Halcon then asked defendant if they "could do any business." Defendant replied, "Yes, I have an ounce of coca right now." Halcon then asked defendant, "How about some chiva?" Defendant replied, "No, not until tomorrow night." "Coca" was defined to mean cocaine; "chiva" to mean heroin. Halcon then asked defendant "how much for the ounce of cocaine and is it good?" Defendant replied, "Six hundred and fifty dollars for the ounce, and as far as the merchandise being good, I do not deal in bad merchandise. You can ask Mike. I dealt to him over at the fence. If I wanted to deal in bad merchandise I could have then." Defendant stated further that he had the cocaine "stashed" in Mexicali; that he would be back at approximately 8 or 8:15.

Defendant did not testify. He introduced evidence intended to show a defense of alibi and asserted through counsel that Banda was mistaken in his identification.

The defense of alibi was based upon testimony of Sanchez, a tenant farmer, who testified that defendant worked for him for four days during the week of January 12 to 17, 1963 at Borrego Springs. Defendant did not work regular hours. There was also a check written by Sanchez to "Cash," dated January 17, 1963, endorsed by defendant, that had been cashed in Borrego Springs on that date.

Halcon's testimony as to the substance of his conversation

with defendant was received over defendant's objection that such conversation was irrelevant and immaterial, that it tended to prove a different and later offense, and as such had no probative value as to the issues on trial, and because of its nature was highly prejudicial.

After Halcon had testified, defendant requested that the jury be advised as to the limited purpose for which the evidence had been received. The court then stated: ". . . this evidence is not admitted to show that the defendant was guilty of some other offense, but merely to show, first of all, that he did refer to a party by the name of Mike and that he had done business with a party by the name of Mike; also, for the purpose of showing knowledge of the character of narcotic or narcotics being sold; also, to show a common scheme, plan or design to traffic in narcotics. That is the only purpose of this testimony. It's not to point out to the jury that another offense was committed." and then asked:

"Is that sufficient?" to which defense counsel replied, "Thank you, Your Honor."

■ In instructing the jury before submission of the case, the court gave the following instruction, known as CALJIC No. 33:

"Evidence was offered in this case for the purpose of showing that the defendant committed another crime than the one of which he is accused and for which he is on trial in this action, namely, offering to sell, furnish or give away a narcotic.

"Such evidence was received for a limited purpose only: not to prove distinct offenses or continual criminality, but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty of the crime charged against him in this action.

"You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case.

"The value, if any, of such evidence depends on whether or not it tends to show:

"(1) the identity of the person who committed the alleged crime in question in this case, if it was committed;

"(2) that the defendant had a motive for the commission of the offense charged against him in this action;

"(3) that the defendant entertained the intent which is a necessary element of the alleged crime for which he now is on trial;

"(4) that the defendant was familiar with or possessed the means alleged to have been used in the commission of the crime of which he is accused in this action;

"(5) that the defendant possessed knowledge that might have been useful in or necessary to the commission of the crime for which he is now on trial;

"(6) that there existed in the mind of the defendant a plan, scheme, system or design, into which fitted the commission of the offense for which he now is on trial."

After the instruction had been given and the jury had retired, the defendant objected to the giving of subparagraphs (2) through (6).

### DEFENDANT'S CONTENTIONS

Defendant contends reversible error was committed by the reception of Halcon's testimony and by the giving of the instruction known as CALJIC No. 33, herein quoted.

It is argued the statements attributed to defendant are particularly prejudicial, since Banda's identification of defendant was based on a single encounter nearly three years before his next seeing defendant; and because of the evidence tending to prove alibi.

Defendant argues his statement to Halcon had no reasonable tendency to establish an inference that he was involved in the transaction of January 14, 1963.

In support of that argument, defendant asserts a lack of evidence to show that only Banda was known as "Mike" and that only defendant was known as "Lalo"; that the conversation showed that the prior dealing with "Mike" was "over at the fence" and did not show when it took place; that there were not in fact sufficient similarities in the transactions of January 1963 and December 1965 to show a common plan, scheme or design, especially because of the lapse of nearly three years between the first and second transactions; that an offer to deal in narcotics in December 1965 is too remotely subsequent to show knowledge of the narcotic character of heroin sold in January 1963; that the evidence was received partly to show defendant's "willingness to traffic in narcotics" and therefore tended only to show his depravity and predisposition to commit such a crime; that even if the evidence had some probative value, such value was negligible and because of the highly prejudicial nature of the statements they should have been excluded on grounds of public policy and that the refusal to exclude them was an abuse of discretion.

It is clear that the admissibility of the evidence of Halcon should be judged not by the weight to be accorded it but by its relevancy.

The seller in the first transaction, of January 1963, called himself Lalo (Lalo I); the person in the second transaction, of December 1965, who allegedly offered narcotics for sale, answered to the name of Lalo (Lalo II).

Both Lalo I and Lalo II are identified as the defendant.

In the first transaction, Lalo I sold to a man known as "Mike" about one ounce of heroin, referred to in the conversations between seller and buyer as "merchandise."

In the second transaction, Lalo II offered for sale an ounce of cocaine and offered to obtain heroin for sale; he referred to both kinds of contraband as "merchandise," admitted to having sold "merchandise" to "Mike," "over at the fence," and, when inquiry was made as to the quality of the cocaine and heroin, stated that the merchandise sold to Mike had been good merchandise.

The first meeting, at which Lalo I had the heroin on his person, took place at a point removed from any city or town and about 75 yards from the International Border between the United States and Mexico. Both meetings had been pre-arranged by a third person. In the second meeting in the City of Calexico, Lalo II said that he had the cocaine stored in Mexicali.

Does the evidence of the conversations in the second transaction tend logically, naturally and by reasonable inference to establish any fact material for the People? If it does, it meets the test of relevancy. (*People* v. *Dabb*, 32 Cal.2d 491, 500 [197 P.2d 1]; *People* v. *Peete*, 28 Cal.2d 306, 315 [169 P.2d 924].)

Proof both of the identity of the seller in the first transaction and of that seller's knowledge of the narcotic nature of what he sold was essential to the People's case.

On the question of the defendant's identity as the seller, it was proper to show that defendant was Lalo II; that Lalo II spoke of narcotics as merchandise; that he admitted having sold "merchandise" to "Mike," "over at the fence."

On the question of the knowledge by the seller of the narcotic nature of the substance sold, it was permissible to show, assuming the identity of Lalo I and Lalo II with the defendant, that in the second transaction defendant admitted having sold "merchandise" to "Mike," that in 1965 defendant equated "merchandise" with narcotics, and that he

claimed the merchandise sold to Mike was of good quality. From all that a permissible inference might be drawn that Lalo I knew the character of the merchandise he sold.

There was other evidence to support a finding that the seller knew the narcotic nature of what he was selling; the evident contraband nature of the substance being sold was inferable from the brief meeting of the previously unacquainted parties in a secluded area close to the border, arranged by an intermediary, at which about an ounce of powder described only as ''merchandise'' was sold for the price of about 10 times its weight in gold dust, and at which arrangements were discussed for the sale and purchase of other merchandise at the same price per ounce in quantities of up to a kilo.

The evidence objected to was therefore admissible. In reaching this conclusion, we have not considered, as urged by the People, that acquaintance in narcotics in December 1965 is evidence of acquaintance with narcotics in January 1963.

We next consider the propriety of the instructions as to the purpose for which the evidence might be considered.

It is clear that evidence of design was not called for. Professor Wigmore explains the theory of permitting evidence of design as follows: ''When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's Design or Plan to do it . . . This in turn may be evidenced by conduct of sundry sorts. (. . . as well as by direct assertions of the design . . .) But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing Intent . . . [I]n the present case the effort is to establish a definite prior design or system which included the doing of the act charged as a part of its consummation . . . to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed.'' (Wigmore, Evidence § 304, p. 202.)

To the extent that proof of a certain *modus operandi* may serve to identify a defendant as the perpetrator of a crime independently proved, evidence of a common scheme or plan may loosely be said to be included in such proof. Evidence of design, however, is of a design antecedent to the act and for that reason is admissible only as bearing on the identity of the actor.[1] One of the meanings of the word

---

[1] Of course, evidence of a design common to several persons would be admissible to show a conspiracy.

"design" is "pattern"; but evidence of other acts to show "design" is not to show a pattern of criminal conduct as an independent fact to be proved. However, the evidence of design may be either direct, as by a declared intention, or circumstantial. Circumstantial evidence might be by showing that a certain type of conduct on the part of the defendant in one or more other instances had been followed by a criminal act of the type in question. Design to do the criminal act in question, for the purpose of identifying the actor, may be inferred from the doing of similar criminal acts following similar precedent conduct of the defendant.

Here there was no evidence of any act of defendant prior to the sale of January 17, 1963, which could have indicated a design to make that sale, or which could have been compared with any other similar act that had been followed by a sale. (Such similar act or acts, had there been any, could have been either prior to or subsequent to the sale in question.)

So that while evidence of similar acts is admissible when necessary to prove design, no such necessity existed in the present case. It was, therefore, error to instruct that Halcon's testimony might be considered to show a common design to traffic in narcotics. Since no specific intent was required, it was error to say that the evidence might be considered upon the question of intent. Likewise, since the existence of a plan, scheme or design into which fitted the commission of the offense speaks of an antecedent plan, scheme or design, it was error to instruct that the evidence might be considered for that purpose.

It must, nevertheless, have been clear to the jury that a sale of heroin had been made by someone, and that the other facts to be determined were whether defendant was the seller, and, if so, whether he knew what he was selling. So viewed, it is difficult to see how the jury could have been misled to defendant's prejudice by the instructions given.

After defendant requested that the jury be advised, the jury was first told during the trial that the evidence was received for, among other reasons, the purpose of showing "a common scheme, plan or design to traffic in narcotics." No objection was then voiced by defendant. The jury was later instructed in less objectionable language about "plan, scheme, system or design."

No objection was made until after the jury had retired. Defendant himself proposed no limiting instruction.

Although the instructions as given were in part erroneous because not called for by the evidence, it was not the instructions but the evidence of the 1965 offer to sell itself that was damaging. That, however, did not make relevant evidence inadmissible. (*People* v. *Lopez*, 60 Cal.2d 223, 249 [32 Cal. Rptr. 424, 384 P.2d 16].)

We are of the opinion, after an examination of the entire cause, including the evidence, that it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (Cal. Const., art. VI, § 4½; *People* v. *Watson*, 46 Cal.2d 818, 836-837 [299 P.2d 243].)

Judgment affirmed.

Brown, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 21, 1966.