[Crim. No. 9693.   Second Dist., Div. Three.   Nov. 22, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE RAY OLLADO, Defendant and Appellant.

Richard A. Walton, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and A. Barry Cappello, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Eugene Ray Ollado was convicted in a non-jury trial of two offenses of the sale of heroin, one on June 12, 1963, and the other June 13, 1963; he was sentenced to state prison and took an appeal from the judgment. Counsel was appointed.

Under stipulation the trial judge read the transcript of the preliminary hearing and additional evidence was received. The People produced evidence of the following facts: Count I. On June 12, 1963, at approximately 5 p.m., Primo T. Orosco, a narcotic agent for the State of California, accompanied one Danny Brown to 732 West Sepulveda Street, San Pedro. Upon arrival, agent Orosco observed Danny Brown meet with appellant. Danny Brown returned to the state vehicle and said that appellant would not meet Orosco and requested $30. Agent Orosco gave Mr. Brown $30 of state funds. Agent Orosco ob-

served Mr. Brown meet again with appellant. They met in the driveway, walked back toward the house out of view for approximately three to five minutes. when Mr. Brown returned to the state vehicle he handed agent Orosco a paper bindle containing a powdered substance. This substance was later determined by an expert chemist to be heroin.

Count II. On June 13, 1963, agent Orosco and Danny Brown returned to 732 West Sepulveda Street. At this address agent Orosco had a conversation with appellant regarding the purchase of one-quarter ounce of heroin. Appellant requested $75, stating he had to go up the hill and would be approximately 10 or 15 minutes, and for Mr. Brown and agent Orosco to wait in the rear of his house in a patio. Agent Orosco gave appellant $75 of state funds and observed appellant walk west on Sepulveda Street. Appellant was gone approximately 20 to 30 minutes and upon his return he joined Mr. Brown and agent Orosco at the rear of the residence. Appellant removed a green balloon from his mouth and handed it to Mr. Brown. Mr. Brown immediately handed the green balloon to agent Orosco. Appellant stated it was strong stuff, to be careful with it, to cut it before they used it. Appellant also gave agent Orosco a phone number to be used regarding future transactions. Agent Orosco asked appellant when he could come back to score some more. Appellant said to call him, that agent Orosco was not to come over to appellant's house to purchase anything less than a quarter, that if he wanted "caps" not to come over. Agent Orosco took the green balloon, marked it for identification, placed it in a cellophane bag, then sealed it in a State of California evidence envelope. This envelope was retained in his possession until he handed it to chemist-agent William Arnold. The contents were then also determined to be heroin.

Orosco testified in the preliminary to the circumstances of the purchases. Appellant did not testify at all concerning the alleged sale on June 12th (count I). He testified that he sold a quarter ounce of heroin to Orosco for $75 on June 13th and his account of the transaction was substantially the same as that of Orosco. This sale was made at the solicitation of Brown who represented to him that he (Brown) and the man who was supplying the money were "sick," meaning that they were suffering withdrawal symptoms and were greatly in need of heroin to relieve their distress. Appellant had known Brown for seven years and knew him to be addicted.

With respect to count I there was no evidence that Brown was searched before he met appellant to make certain he was

not carrying heroin or that he was searched for money after he returned with the heroin.

The first contention of appellant as to count I is that in the absence of evidence that Brown did not carry the heroin when he contacted appellant and in view of the evidence that the two men were out of sight of Orosco for three to five minutes, there was insufficient evidence that appellant furnished the heroin. For this proposition appellant cites *People* v. *Barnett,* 118 Cal.App.2d 336 [257 P.2d 1041] ; *People* v. *Richardson,* 152 Cal.App.2d 310 [313 P.2d 651] ; *People* v. *Morgan,* 157 Cal.App.2d 756 [321 P.2d 873] and *People* v. *Robison,* 193 Cal.App.2d 410 [14 Cal.Rptr. 181].

These cases and numerous others which are in accord are merely illustrations of the rule that where the evidence of guilt is purely circumstantial it is legally insufficient unless it is so complete as to exclude every reasonable hypothesis of innocence. Under this rule it is held that where the case of the People consists solely of evidence that an informer was given money with which to purchase a narcotic, was seen to contact the defendant and afterwards returned with a narcotic, the evidence is insufficient in the absence of evidence that the informer did not have the narcotic on his person when he left or the money when he returned and no evidence that the defendant delivered anything to the informer.

If the only evidence had been that which described the events that occurred on June 12th we would have to apply the rule of the foregoing cases and hold the evidence insufficient as to count I. Such is not the case. ██ Even when there is no search of the informer and no direct evidence that the informer received anything from the defendant, identification of the defendant as the supplier of the narcotic may be established by other evidence which reasonably and logically tends to prove that fact. (*People* v. *Valencia,* 156 Cal.App.2d 337 [319 P.2d 377] ; *People* v. *Sauceda,* 199 Cal.App.2d 47 [18 Cal. Rptr. 452].)

Thus we come to the critical question as to the significance of the evidence of the transaction on June 13.

The rule respecting admissibility of evidence of other crimes was stated in *People* v. *Peete,* 28 Cal.2d 306, at pages 314, 315 [169 P.2d 924] : "It is settled in this state, however, that except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. ██ 'The general tests of the admissibility of evidence in a criminal

case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' [Citations.] 'It is true that in trying a person charged with one offense it is ordinarily inadmissible to offer proof of another and distinct offense, but this is only because the proof of a distinct offense has ordinarily no tendency to establish the offense charged. But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion.' *People* v. *Walters,* 98 Cal. 138, 141 [32 P. 864].''

■ It is the universally accepted rule that evidence of other crimes may be received to identify the defendant as the perpetrator of the offense for which he is on trial.

In *People* v. *Scott,* 218 Cal.App.2d 249, the court stated at pages 253, 254 [32 Cal.Rptr. 225] : ''Where the identity of the defendant is in issue, evidence that he committed other crimes or attempts under circumstances which were remarkably similar to the one charged may be admitted for the purpose of showing that the defendant did in fact commit the crime charged. (*People* v. *Cavanaugh* (1955) 44 Cal.2d 252, 265, 266 [282 P.2d 53].) '' This statement of the rule is supported by overwhelming authority.

As to the admissibility of evidence of other crimes it is said in a note, 3 A.L.R. 1540 : ''. . . [W]here evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, it is admissible, in spite of the fact that it tends to show the guilt of the accused of other crimes for which he is not on trial.'' In addition to the multitude of cases cited in support of the rule many others are listed in annotations in 22 A.L.R. 1016, 27 A.L.R. 357 and 63 A.L.R. 602. The cases listed that are of particular interest are those in which the identity of the defendant as the seller of liquor was in issue and evidence of other sales made by defendant was admitted to identify him as the one who made the sale for which he was on trial. *People* v. *Cervantes,* 177 Cal.App.2d 187 [2 Cal.Rptr. 107], held that evidence of a separate sale of heroin was relevant and admissible as tending to identify the

defendant as the one who made the sale for which he was on trial.

Admissibility of the evidence of other crimes usually comes in question when it is offered to prove the commission of some other crime and the defendant interposes an objection. Before ruling on the objection the court must determine from evidence of the nature of the crime and the circumstances of its commission whether it meets the foregoing test. Here the evidence of the June 13th transaction was admissible under count II and was not subject to objection. Necessarily, the contention of defendant was that the evidence could not be considered by the court as to count I which was, in reality, the same as a challenge to its admissibility.

It was established that a crime was committed on June 12th; Orosco parted with $30 and received heroin in return; he thought the narcotic came from Ollado and that Ollado got the money; it was possible that Brown furnished the heroin and kept the money. Therefore, the question was merely one of the identity of the supplier.

The question necessarily arises as to the degree of similarity that must exist before evidence of one crime can have probative value to identify the defendant as the perpetrator of another. In the *Peete* and *Scott* cases the evidence of the crimes charged and the other crimes proved was, indeed, remarkably similar in motive, design and manner of execution. However, the formula for the degree of similarity as related to admissibility cannot be stated in a word or two, such as "remarkable," "striking," "marked," or "practically identical."

The test, as stated in *Peete,* is whether the evidence of another crime logically, naturally and reasonably tends to prove a fact in issue.

Appellant contends that the circumstances of the two offenses were entirely different and that evidence of the second offense merely tended to prove he had a disposition to violate the law, which evidence, of course, is not permitted. He alludes to evidence that on the 12th, the heroin was delivered in a paper bag while on the 13th it came in a rubber balloon; the first sale was made in less than five minutes, the second took 15 or 20 minutes; the first was for $30 and the second for $75; the second batch was of better quality than the first. There is no merit in the argument. The same narcotic was sold to the same officer on successive days in amounts the officer wished to buy. There was even greater similarity in the two transactions than was necessary to render evidence of the separate offense

admissible and to justify an inference, when considered with the other evidence that appellant provided the heroin on each occasion. There is no merit in the argument that evidence of the two sales did not prove that appellant was following a common plan or system in selling narcotics. Proof of systematic procedure is one means of establishing identity but not the only one.

The trial court found the evidence sufficient to prove that appellant and not Brown furnished the heroin on the 12th. This result was reached by weighing the probabilities to determine whether it was more reasonable to infer that the narcotic was furnished by Ollado, who had heroin and was willing to sell it, than by Brown who was not proved to have any heroin of his own or to have been engaged in selling it for others.

We could not disagree with the court's factual determination unless we were convinced that it was illogical and unreasonable, which we cannot do. It was by far the more reasonable of the two conclusions the court could have reached.

It is contended that the court erred in giving weight to hearsay evidence in finding appellant guilty. In the cross-examination of Orosco in the preliminary he was asked, ''When did you first request that Mr. Brown introduce you to the person known to you at that time as Swan [appellant] ? A After receiving information that the person known as Swan was dealing in the illicit narcotic traffic, selling heroin from his house, I then instructed Mr. Brown to attempt to introduce me to Swan.'' However oblique and unexpected, the answer was not wholly unresponsive to the question. There was no motion to strike the answer and the incident furnishes no ground for the assignment of error.

It is contended further that appellant did not have a fair trial on his defense that he had been entrapped by Brown and Orosco. If the proceedings at the trial had been the same as those at the preliminary appellant would have had reason to complain. In the preliminary appellant sought to develop that Orosco had made an arrangement with Brown to aid in the apprehension of narcotic violators. To all the many questions calculated to develop this quite obvious fact objections were sustained. When appellant's attorney asked leave to make an offer of proof the court said, ''No. It isn't material. The objection is sustained. It has nothing to do with entrapment. The law has held in many, many Supreme Court cases that it is not entrapment to give a person an opportunity to break the law.''

A litigant may justly complain if the judge rules adversely to him on the merits of his case without affording him an opportunity to prove it. (*Moore* v. *California Minerals etc. Corp.*, 115 Cal.App.2d 834 [252 P.2d 1005].) Nothing like that occurred in the trial.

It is not contended that illegal entrapment in either of the sales was established as a matter of law. It is asserted only that appellant did not have a fair trial of that asserted defense. In extended argument it is contended that the trial judge reached his final conclusion by a "circularity" of reasoning. We have compared the judge's reasoning leading to his conclusions with the reasoning in appellant's brief in criticism of the same, and are of the opinion that even if circularity of reasoning is the test of the soundness of a conclusion the judge easily comes out ahead.

Upon the defense of entrapment appellant makes no mention of the many decisions of the California courts of review on that subject. His counsel properly refrains from questioning the sufficiency of the evidence to defeat that defense. Under the California decisions law enforcement officers may lawfully descend to the depths of deceit and trickery in order to entrap suspected narcotic offenders. This unhappy situation has been brought on by the activities of a vicious criminal element which can only be kept under control by the use of all available means of detection. Those who would avoid the traps set by the police had best stay out of the woods. The defense of entrapment was fairly tried and justly determined.

The judgment is affirmed.

Ford, J., concurred.

KAUS, J.—Dissenting in part.

I entirely agree that count II must be affirmed. To hold otherwise would enable the defendant to acquire a vested right in the magistrate's errors by stipulating that the evidence at the preliminary hearing may be considered by the trial judge.

Unfortunately I cannot agree that the evidence concerning the transaction of June 13 may legitimately be considered with respect to count I.

There can be no question that the sale of June 13 throws a great deal of light on the events of June 12, too much, in fact. My problem is, however, that the chain of inferences which causes me to feel that there was more than adequate logically

relevant evidence to support the finding that defendant did make a sale on June 12, inevitably contains one essential but forbidden thought, namely that defendant sold on June 12 because the sale of June 13 shows his ready disposition to make sales of heroin.

The rule concerning the admissibility of other crimes has been stated in various ways: as a general rule of exclusion, subject to a number of exceptions or as a rule of admissibility for all purposes except where the only relevance to the crime charged is that the other crimes disclose a disposition or propensity to commit acts such as the one under investigation. (Stone, *The Rule of Exclusion of Similar Fact Evidence: England,* 46 Harv.L.Rev. 965; Stone, *The Rule of Exclusion of Similar Fact Evidence: America,* 51 Harv.L.Rev. 988, Comment 7 U.C.L.A. L.Rev. 463; Witkin, Cal. Evidence (2d ed. 1966) § 341, p. 300.) For the purpose of my discussion I cheerfully accept the broad rule of admissibility, which appears to be the one chosen by the framers of the Evidence Code. (Evid. Code, §1101.)

Although it would be foolish to attempt to list all possible purposes for which evidence of other criminal acts may be legitimately admitted, they fall into two groups: 1. Where such evidence is admitted to give color to an act of defendant concerning which there is other evidence before the court; and 2. where such evidence is used to prove the identity of defendant as the perpetrator of the act.

It is obvious that we are concerned with a problem of the second type. The cases cited in the majority opinion hold that the evidence relating to June 12 is insufficient to prove that a sale took place when Orosco lost sight of defendant and Brown. The June 13 evidence is therefore not used just to show, for example, that defendant had knowledge of the narcotic nature of a substance sold to Brown; it is used to prove that a sale took place, in other words to prove the identity of the person from whom Brown at some time or other obtained the narcotic.

There are, of course, several perfectly proper methods by which evidence of other crimes can be used to prove the identity of the person who committed the crime under investigation. One of the standard ways in which such evidence may provide a clue to identity is by showing that the other crime furnished the motive for the later one. (*People* v. *Hall,* 200 Cal. 166, 172-173 [30 P.2d 23, 996].) Such is not the case here. Another common train of thought by which evidence of other

crimes is used to throw light on identity, is proof that the other crimes and the one in question formed part of one "scheme or design."[1] A classic case is *People* v. *Glass,* 158 Cal. 650, 661-665 [112 P. 281].[2] Granted that if the other crimes disclose a larger scheme of which the one in question is but a part it is perfectly permissible to show such other crimes both before and after, I see no such larger plan in one isolated sale and admitted willingness to make future sales, except by reasoning that defendant was disposed to make a living by selling heroin.

Finally identity is often proved by showing a distinct mode of operation, which permits the inference that the same person committed both crimes. I do not believe that there is anything sufficiently distinctive about the transaction of June 13 that enables us to say that when defendant and Brown disappeared from Orosco's view on June 12 a sale of heroin took place. In fact the two transactions differ in significant detail. On June 13 defendant did not hesitate to deal with Orosco directly, he had to go "up the hill" to get the heroin and was gone for about 10 or 15 minutes. On June 12, according to hearsay testimony introduced by the People defendant refused to deal with Orosco and the suggested sale took place during an absence of between three to five minutes. The quantity sold on June 13 was 10 times as large as the amount given by Brown to Orosco on June 12. Finally, on June 13, Ollado indicated that he did not want to make sales of the type involved in count I.

---

[1] "Design" is used here synonymously with "plan." The word is also used interchangeably with "pattern." It seems to have become our habit to use the phrase "mode of operation" or "modus operandi" when discussing the "pattern" of a crime. The different meanings of the word "design" were adverted to by the Supreme Court in *People* v. *Cavanaugh,* 44 Cal.2d 252, 265-266 [282 P.2d 53] in the following passage: "In this connection it should be observed that while it is often said that evidence of similar crimes is relevant to show plan, scheme, system or design, this is not to be understood as meaning that such evidence is admissible only if it tends to show premeditated, calculated design; it also is relevant and may be admissible where, as here, it tends to show that defendant was guilty of the crime charged by showing a peculiar or characteristic behavior pattern of defendant which is manifest in the conduct of the transgressor in both crimes." See also *People* v. *Soto,* 245 Cal.App.2d 401 [53 Cal.Rptr. 832].)

[2] On a charge of bribery of a supervisor, which defendant denied, it was held to be permissible to prove bribery of other supervisors to show "that the specific act of bribery charged was but a part execution of one conspiracy, a scheme which contemplated the bribery of a sufficient number of Supervisors to prevent the granting of the franchise." (*Ibid.,* p. 662.)

There are perhaps other ways in which evidence of other crimes can prove identity, but none come to mind nor are they suggested in the court's opinion. With the greatest respect I suggest that the fundamental fallacy of that opinion is that it has taken the often repeated statement that evidence of other crimes is admissible to prove identity (e.g., *People* v. *Lopez,* 60 Cal.2d 223, 250 [32 Cal.Rptr. 424, 384 P.2d 16]) too literally, and applied it to a situation where the only logical process of reasoning includes reasoning from disposition. One eminent writer in the field has said: "It is believed, however, that a need for proving identity is not ordinarily of itself a ticket of admission, but that the evidence will usually follow, as an intermediate channel, some one or more of the other theories here listed. Probably the second (larger plan), the third (distinctive device) and the sixth (motive) are most often resorted to for this purpose." (McCormick on Evidence, § 157, p. 330.) Moreover I believe that the court's opinion, on its very face, demonstrates that it reasoned from disposition. It is said that the trial court's finding as to count I "was reached by weighing the probabilities to determine whether it was more reasonable to infer that the narcotic was furnished by Ollado, who had heroin *and was willing to sell it,* than by Brown who was not proved to have any heroin of his own or to have been engaged in selling it for others." (Italics added.) I agree that this is a perfectly reasonable and logical deduction from the facts, but one which, I submit, is not permissible.

I must, of course, admit that there are several cases in the books which are irreconcilable with my views. While I could distinguish many of them, such as, for example, *People* v. *Griffin,* 209 Cal.App.2d 557, 563 [26 Cal.Rptr. 311] by arguing that in spite of broad general language, the evidence of other sales was properly admitted to prove knowledge, there is very little I could do with cases like *People* v. *Marshall,* 226 Cal. App.2d 243, 244-245 [37 Cal.Rptr. 887] and *People* v. *Lewis,* 208 Cal.App.2d 422, 424-425 [25 Cal.Rptr. 298]. If those were the only authorities in point, I would not dissent but reluctantly concur. However, I do not think the court could do any better with *People* v. *Baskett,* 237 Cal.App.2d 712, 717 [47 Cal.Rptr. 274] ; *People* v. *Chambers,* 231 Cal.App.2d 23, 31 [41 Cal.Rptr. 551] and *People* v. *Garcia,* 201 Cal.App.2d 589, 593 [20 Cal.Rptr. 242] than I can with *Marshall* and *Lewis.* Finally I would point to a series of cases dealing with illegal sales of alcoholic beverages where evidence of other sales was held inadmissible. These cases are *People* v. *Pagni,* 67 Cal.

App. 303, 307 [227 P. 972]; *People* v. *Smith,* 64 Cal.App. 344, 345-347 [221 P. 405]; *People* v. *Amort,* 60 Cal.App. 29, 36 [212 P. 50]; *People* v. *Morales,* 45 Cal.App. 553, 554-556 [188 P. 58]; *People* v. *Dial,* 28 Cal.App. 704, 706-707 [153 P. 970] and *People* v. *Clark,* 28 Cal.App. 670, 674-675 [153 P. 719]. In *People* v. *Smith, supra,* such evidence was condemned as follows: "It is a dangerous practice and one which is not in keeping with American ideals to charge a man with one offense and on his trial therefor either to prove, or offer to prove, that he has at other times and places committed offenses of a nature similar to the one of which he is accused." (*Ibid.,* p. 346.) I am told by those who remember, that some of the offenses involved in these liquor cases were not deemed to be very reprehensible at the time. On the other hand, we all despise the heroin peddler. I do not see, however, that one's attitude toward the particular crime involved should govern the admissibility of evidence to prove it. I would therefore reverse the judgment as far as count I is concerned.