The defendant was indicted and convicted for the unlawful sale of cocaine contrary to the provisions of Alabama Code Section 20-2-70 (1975). Sentence was fixed at eight years' imprisonment. Three issues are presented on appeal.
 I
Present in the courtroom at the beginning of the defendant's trial was a group of eighth grade students who were "a part of an organized regular scheduled program whereby every eighth grader in the City and County of Montgomery comes through the courthouse". Defense counsel objected to their presence.
 "I would move to exclude that group of students from the courtroom on the grounds that their presence here is something that is arranged for and I think it has a prejudicial effect on my client's opportunity for a fair trial because I'm afraid that the jurors might be affected in their deliberations in this case and might be more inclined to find my client guilty in the presence of a group of eighth graders than they would if they were not subjected to that influence."
This motion was overruled. Defense counsel did not offer to prove that this "undesirable influence" existed and, after his objection was overruled, did not further pursue the matter. There was no motion for a new trial. The objection is not to any particular conduct of the group or any one of them, but to their mere presence in the courtroom.
While the defendant is entitled to a trial free of any extraneous influence that might be to his prejudice, Hammond v.State, 26 Ala. App. 391, 160 So. 900 (1935), a criminal trial should be public. Jackson v. Mobley, 157 Ala. 408, 47 So. 590
(1908). If the conduct of a spectator interferes with the administration of justice, he may be removed. Williams v.State, 57 Ala. App. 158, 326 So.2d 686, cert. denied, 295 Ala. 428, 326 So.2d 692 (1975). Much is left to the discretion of the trial judge in this regard. McGuire v. State, 239 Ala. 315,318, 194 So. 815 (1940). Although McGuire was a prosecution for the murder of a street car conductor, the trial court refused to exclude from the courtroom some conductors or motormen who entered during the trial and who were in uniform. The appellate court upheld the judge's action:
 "During the entire trial the record gives no indication of any feeling or prejudice or the slightest disorder; and the mere fact that it was a conductor who was killed gave no just reason to exclude these men from the courtroom. This too was largely a matter of discretion, with no abuse thereof shown." 239 Ala. at 318, 194 So. at 816.
As McGuire indicates, even persons related to the victim have been properly allowed to remain in the courtroom absent prejudicial conduct on their part. Howard v. State, 273 Ala. 544, 142 So.2d 685 (1962) (daughter and wife of victim in murder prosecution); Kendrick v. State, 55 Ala. App. 683,318 So.2d 378 (1975) (father of victim in case of assault with intent to ravish); Brodka v. State, 53 Ala. App. 125,298 So.2d 55 (1974) (brother of deceased in murder prosecution); Pollardv. State, 12 Ala. App. 82, 68 So. 494, reversed on other grounds, Ex parte Pollard, 193 Ala. 32, 69 So. 425 (1915) (victim's wife and children in murder prosecution).
The comments of the court in Pollard, 12 Ala. App. at 89-90,68 So. at 497, are enlightening. *Page 1125 
 "No objectionable conduct is shown or complained of otherwise than the mere presence of the parties. The question presented is purely one of the trial court's discretion, and nothing is disclosed by the record showing an abuse of that discretion. Courts exist for the administration of justice, and in the conduct of trials in general much must, of necessity, and in the very nature of things, be left to the discretion of the court charged with the duty of administering justice, and having the inherent power to regulate such matters in the trial forum. The court is charged with a high and important duty not without its difficulties in taking proper care to effect the object of according to the accused a fair and impartial trial while having due regard to interests of the state. No legal reason except that addressed to the court's discretion was assigned why the widow and children should have been excluded or removed to a different part of the courtroom, and we know of no rule of law that would authorize a court to exclude spectators or other persons from the courtroom, or remove them from the view of the jury, during the progress of a public trial of this nature, except for misconduct or some cause that appealed to the sound discretion of the court in administering substantial justice; and it is only an abuse of that discretion that this court can review. . . ."
The record does not support a finding of prejudice to the defendant from the presence of the students in the courtroom. This was a matter within the discretion of the trial judge, and, no abuse being shown, his judgment must be upheld.
 II
The defendant alleges that there was a fatal gap in the sufficiency of the evidence to support his conviction because the alleged sale was made to an informant who did not testify and was made out of the presence of any law enforcement officer. The defendant contends that, in the absence of direct proof that the informer received the cocaine from the defendant, the possibility arises that he might have received it from some unidentified person, or that the cocaine was his, cached in the residence for such an opportunity.
The cases cited by the defendant in support of his contention
 "are merely illustrations of the rule that where the evidence of guilt is purely circumstantial it is legally insufficient unless it is so complete as to exclude every reasonable hypothesis of innocence. Under this rule it is held that where the case of the People consists solely of evidence that an informer was given money with which to purchase a narcotic, was seen to contact the defendant and afterwards returned with a narcotic, the evidence is insufficient in the absence of evidence that the informer did not have the narcotic on his person when he left or the money when he returned and no evidence that the defendant delivered anything to the informer."
* * * * * *
 "Even when there is no search of the informer and no direct evidence that the informer received anything from the defendant, identification of the defendant as the supplier of the narcotic may be established by other evidence which reasonably and logically tends to prove that fact."
 People v. Ollado, 246 Cal.App.2d 608, 55 Cal.Rptr. 122, 123-124 (1966).
The fact that no witness saw the exchange of money and narcotics between the informer and the defendant is not fatal to the prosecution if the identification of the defendant as the supplier of the narcotics may be established by other evidence which reasonably and logically tends to prove that fact.
On the evening of July 21, 1978, Don Williams, an undercover agent for the Narcotics Enforcement Division of the Alabama *Page 1126 
Beverage Control Board, went to the Wetumpka residence of an informant, Charles Gates. Agent Williams and Gates telephoned the defendant although the contents of that conversation, which Williams overheard, were not disclosed.
After this call, Williams and Gates went to an area near 2206 Greenville Street in Montgomery. There Agent Williams conducted a "cursory search" of informant Gates "to ascertain that he had nothing on his person other than what I provided for him or gave to him prior to going into the residence of Allen Hall", the defendant. Finding nothing on Gates, Williams gave him four hundred and ten dollars.
A pickup truck driven by the defendant was parked outside the residence on Greenville Street. There were no "strange automobiles" there and the "cars there were known to be those of" the defendant. The defendant answered the door and Gates introduced him to Agent Williams. Gates and Williams then waited in the living room while the defendant finished his business on the telephone in another room of the house.
The defendant returned after approximately five minutes and asked Gates to go to the rear portion of the house with him. Agent Williams heard loud shouting to the effect that the defendant "was displeased or upset with the fact that the confidential informer had brought a stranger to the house". The defendant stated "don't you ever bring an S.O.B. to this house again without first telling me".
A "short time" passed and the defendant returned to the living room and placed a record on the stereo. The defendant then returned to the rear portion of the house.
Within two or three minutes the defendant and Gates returned to the living room. Gates was carrying a Merit cigarette carton and placed it on the coffee table. The carton was open and contained some yellow capsules in a plastic bag and two small packages of white powder later determined to be cocaine.
Agent Williams and the defendant then had a brief conversation in which the defendant "was attempting to solicit large quantities of marijuana for" Williams. The defendant "stated that anything over . . anything up to fifteen pounds he could handle financially himself and anything over fifteen pounds that he could get backing for it. That he would be willing to sign a loan or a note to (Williams) if (Williams) would front large quantities of marijuana to him." Williams and the defendant also had a conversation about the yellow pills during which the defendant commented "something to the effect that a lot of people were getting off on them, that they were real good speed". These yellow pills were stimulants but contained no prohibited or controlled substance under Alabama law.
Williams and Gates, who carried the narcotics, left the residence. Williams testified that the narcotics "stayed in my sight until the informant had sat down in the seat of the van". Williams drove a couple of blocks, pulled over, and again conducted a "cursory search" of Gates. "There was no money or anything on his person at that time."
Agent Williams testified that during the time he was in the house there was no indication that there was anyone else inside the house besides himself, Gates and the defendant; that he neither saw nor heard anyone. However, on cross examination, he testified that he "couldn't swear there was no one else there".
Agent Williams defined a "cursory search" as "a search of an individual's person, of his clothing, his shoes — to ascertain that there is no other property within his clothing". Williams checked the informer's clothing but did not conduct a thorough search of his anatomy for hidden quantities of drugs.
Williams did not see any money pass between the informant and the defendant.
As in People v. Grays, 265 Cal.App.2d 14, 71 Cal.Rptr. 32, 36
(1968), the evidence in *Page 1127 
this case does not bring the defendant within the purview of those cases which have required proof that the purchaser of narcotics lacked the opportunity to contact anyone other than the defendant at the time of the alleged sale.
This Court discussed the sufficiency of circumstantial evidence to support a conviction in Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude."
* * * * * *
 "Guilt is not established by circumstantial evidence unless the facts relied on are such that it is the only conclusion fairly to be drawn from them. . . . If all the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt a conviction is warranted. . . .
 "However `it is not every hypothesis, but every reasonable hypothesis but that of guilt, that the circumstantial evidence must exclude'. . . .
 "(T)he true test of the sufficiency of circumstantial evidence to justify a conviction is whether the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt. It is not necessary for the circumstances to be `such as are absolutely incompatible, upon any reasonable hypothesis, with the innocence of the accused'."
(Citations omitted)
Cumbo, 368 So.2d at 874 and 875.
In reviewing the facts of this case we think that there was sufficient evidence from which the jury might have properly excluded every reasonable hypothesis except that of the defendant's guilt beyond a reasonable doubt.
The cases cited by the defendant are distinguishable upon their own particular circumstances. In People v. Lawrence,168 Cal.App.2d 510, 336 P.2d 189 (1959), the court found a "total gap" in the chain of evidence where the informer alone went into the defendant's residence and remained for approximately three hours during which time the defendant's wife and another individual entered the apartment. Upon leaving the defendant took a taxi and rode for two blocks, got out and only then did he deliver to the police a package of heroin allegedly purchased from the defendant. In People v. Blackshear,261 Cal.App.2d 65, 67 Cal.Rptr. 662 (1968), the court noted that the officer did not search the informant before and after the transaction, did not see what was exchanged, and the informant was not in the officer's view when the officer went to the driver's side of the car, thus making it possible for the informant to pocket the ten dollars and produce the narcotic filled balloon himself. The court recognized the principles stated in Ollado, supra, that neither a search of the informer nor direct evidence that the informer received the narcotics from the defendant is essential to a conviction, but noted that there was no additional evidence which would reasonably and logically support the conviction of the defendant.
In People v. Rivera, 59 A.D.2d 874, 399 N.Y.S.2d 662 (1977), the informant was wearing a concealed microphone. The police picked up a number of voices indicating that there were several people in the building with the defendant. The court noted that the police had no personal knowledge that the defendant was in the building and held that, in the absence of any proof that the informer received the narcotics from the defendant, the possibility arises that the informer might have received them from some unidentified person or that it was his *Page 1128 
cached in the building for such an opportune time as this. The court noted that an inordinate amount of inferences would have to be drawn from other inferences in order to sustain the defendant's conviction.
While the State's case was not the strongest case of circumstantial evidence, we think that it was sufficient to present a question for the jury. To accept the defendant's argument under the instant factual situation would require proof of his guilt beyond any conceivable doubt, whether reasonable or not, and place upon the prosecution the burden of proving circumstances that are absolutely incompatible with his innocence. That is not the test of the sufficiency of circumstantial evidence.
 III
The indictment charged only that the defendant did "sell" cocaine. The defendant's written requested charge was refused.
 "Even if you should be satisfied beyond a reasonable doubt, from the evidence that Allen Hall delivered cocaine to someone, you could not convict him in this case unless you find beyond a reasonable doubt that a sale for money or other valuable consideration took place."
On this matter, the trial judge instructed the jury.
 "Now as to the law on the sale of drugs. . . . Another element of proof, a second element is that it was the word sale has its ordinary and common meaning, simply, to transfer something by agreement from one person to another for some consideration. The third element, of course, is that you must be convinced beyond a reasonable doubt and to a moral certainty that this defendant sold cocaine."
Those instructions fairly and adequately covered the written instruction requested by the defendant.
On appeal, the defendant argues that the trial court's oral charge "has a tendency to confuse non-lawyer jurors by using the term `consideration', the meaning of which would be uncertain and confusing to the jury". If this argument is valid, then the trial judge properly refused to give the defendant's requested charge because it also contains the term "consideration".
Our review of the record convinces us that the question of the defendant's guilt or innocence was properly submitted to the jury. The judgment of the circuit court is affirmed.
Affirmed.
All the Judges concur.