[Crim. No. 10934. Second Dist., Div. Four. Oct. 27, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RUFUS
MONROE BASKETT, Defendant and Appellant.

Willedd Andrews for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William L. Zessar, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was tried before a court sitting without a jury and was convicted of lewd conduct with a child in violation of Penal Code section 288. He was sentenced to state prison and is here appealing from the judgment.

The People's case in chief is based upon the testimony of a 13-year-old girl, the granddaughter of the defendant. She testified that she stayed with her grandfather at his home on the weekend of July 6 and 7, 1963. About 2:30 p.m. on Sunday, July 7, while they were alone in the house, defendant helped the prosecutrix to take a bath by washing her back and private parts. After the bath the prosecutrix lay on a bed in defendant's bedroom. She was on her back with her knees up. Defendant knelt on the floor and rubbed his hand on her private parts, while with his other hand he rubbed his private parts. Afterwards, she said, ''he told me that what he was doing wasn't wrong and he just wanted to show me what it was all about so I wouldn't try to get into any trouble.'' According to the prosecutrix' testimony defendant had done the same thing to her on more than five other occasions. She further testified that she never mentioned any of these events to anyone until May 1964.

Defendant testified that he had never committed any lewd acts with the prosecutrix or touched her private parts or been naked in her presence. He said he and his wife had taken the girl to church with them in the forenoon of July 7, then they had come home for lunch, and after that, commencing about 2 p.m., a number of guests came to the house and stayed all afternoon. Defendant also testified that he had raised his granddaughter and that she lived part of the time in his home and part of the time with another woman. The girl was not being raised by her mother (defendant's daughter) because, according to defendant, the latter "was a very heavy drinker."

Defendant's wife testified that she had been in the house with defendant and the girl at all times after they had returned from church, and that, commencing at 2 p.m. they had had company because it was her son's birthday. She said she could not remember any occasion during the previous year when defendant and the granddaughter had been alone together in the house. Defendant's brother-in-law and his wife testified that they had arrived at the birthday party at defendant's home at 2 p.m. on July 7 and had spent the afternoon. Defendant's stepson and his wife testified that they had arrived at the party about 2:30 p.m. and had found the others present. Defendant's employer, the pastor of defendant's church, the pastor's wife, and defendant's stepdaughter all testified that defendant had a good reputation both for truthfulness and for his morals.

In rebuttal the prosecution called defendant's daughter Betty, who is the mother of the prosecutrix. Over objection she testified that in 1936 or 1937 when she was a young girl defendant would place her on a bed with her legs "in a position up that you would be examined by a doctor" and defendant would touch her private parts while he masturbated. She said this happened so often she could not remember how many times.

The prosecution then called defendant's daughter Corrine. She testified that in 1929, when she was 7 years old, the defendant made a practice of placing her on a bed and then placing his hand on her privates while he masturbated.

Defendant returned to the witness stand and denied that he had ever molested his daughters.

There can be no question as to the sufficiency of the evidence when measured by the standard which must be applied in an appellate court. The testimony of the prosecutrix was adequate to prove every element of the offense. The conflict in the evidence was for the trial court to resolve.

The trial judge believed the testimony of the prosecutrix and disbelieved the defense evidence which conflicted with it, and this decision on the factual issue is not subject to review here. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

The judgment must be reversed because of the error in receiving over the defendant's objection the highly prejudicial testimony of the daughters concerning the defendant's conduct when they were children.

The rule which allows the admission of evidence of prior misconduct of a defendant has been stated in *People* v. *Peete,* 28 Cal.2d 306, 314 [169 P.2d 924]: "It is settled in this state, however, that except when it shows merely criminal disposition (*People* v. *Cook,* 148 Cal. 334, 340 [83 P. 43]; *People* v. *Glass,* 158 Cal. 650, 658 [112 P. 281]), evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' [Citations.]"

The exception contained in the first sentence of the quoted language is the applicable rule here. The authorities uniformly declare that where the sole relevance of the evidence of past conduct is to establish a propensity or disposition to commit acts similar to those charged, it is not admissible. (*People* v. *Whalen,* 70 Cal.App.2d 142, 146 [160 P.2d 560]; *People* v. *Musumeci,* 133 Cal.App.2d 354, 362 [284 P.2d 168]; see 1 Wigmore, Evidence (3d ed. 1940) §§ 193, 194, p. 642; Witkin, Cal. Evidence (1958) p. 158; Fricke, Cal. Criminal Evidence (6th ed. 1964) p. 290; 7 Cal. Law Revision Commission, Reports, Recommendation and Studies: Evidence Code with Official Comments, 1205-1206.)

Such evidence is excluded not because it lacks relevancy, but for reasons of policy. In *People* v. *Glass,* 158 Cal. 650, 654-655 [112 P. 281], the court said: "It should seem unnecessary to state—but apparently it is not—that a multitude of acts, facts, and happenings upon which men base their opinions and judgments of their fellowmen do not come within the definition and scope of *evidence* as known to our law. If a man is informed, and believes his informant, that another

man is dissolute, is a gambler, is an associate of known thieves, is a petty larcenist, and makes his home in a house of prostitution, he will justly look upon such a person with suspicion, will properly govern his dealings and relations with that person by this information, and would most naturally say, if he learned that the man had been arrested for burglary, that 'it was to be expected.' Yet, upon the trial of that man for burglary, no word of these matters would be admissible against him. Not because they would not have a tendency to show that a man of such character would be much more likely to commit the given offense than would a man of proven upright and honorable life, but because the law, for reasons good and sufficient unto itself, has declared that a man shall be put upon trial for but one offense, and that he shall not be embarrassed by being called upon to defend or exculpate himself, or to explain any damaging act or fact which is not embraced within the charge he is called upon to meet.''

Dean Wigmore gave this explanation of the rule against admissibility of specific acts of misconduct to show bad character: ''It may almost be said that it is because of this indubitable Relevancy of such evidence that it is excluded. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. Moreover, the use of alleged particular acts ranging over the entire period of the defendant's life makes it impossible for him to be prepared to refute the charge, any or all of which may be mere fabrications. These reasons of Auxiliary Policy (*post*, § 1863), directed to prevent the risks of reaching verdicts through insufficient evidence, have operated to exclude that which is in itself relevant.'' (Wigmore, *op. cit. supra*, at p. 646.)

In the case at bench the issue was simply one of credibility. The prosecutrix described a series of acts which, if committed, left no doubt as to the defendant's lewd intent. The defendant denied that the events had occurred at all. This was the state of the record when the prosecution produced the testimony of the defendant's daughters. Such testimony could add nothing to the People's case except as proof of the defendant's propensity for this kind of sexual misconduct,

The Attorney General has argued that the evidence was admissible to show "pattern, scheme, design, project or plan," citing *People* v. *Malloy*, 199 Cal.App.2d 219, 230 [18 Cal. Rptr. 545], *People* v. *Crisafi*, 187 Cal.App.2d 700, 707 [10 Cal.Rptr. 155], and *People* v. *Cassandras*, 83 Cal.App.2d 272, 279 [188 P.2d 546].

There was no evidence of a "common plan" in the sense of any single scheme or design which embraced all of the acts. The past events are not connected with the offense charged by anything other than the supposed disposition of the defendant to commit additional offenses of the same kind. The expression "common plan," as used in the cited cases, refers to a unique methodology or peculiar behavior pattern which tends to identify the perpetrator of an earlier crime as the person who perpetrated the crime charged. "Common plan or scheme," in this sense, has no relevancy unless it aids in identifying the one who committed the act charged. For a discussion of the theory of admissibility of evidence of other crimes showing similar modus operandi to prove identity see *People* v. *Lindsay*, 227 Cal.App.2d 482 [38 Cal.Rptr. 755].

 In the present case that theory of admissibility is inapplicable for two reasons. The first is that we are unable to say that the method or manner in which the former acts were committed has such unique qualities as to distinguish the perpetrator from other child molesters. The second reason is that the defendant was so well known to his granddaughter that there could not be any possible doubt about who attacked her, if she was attacked at all. Identity was not a genuine issue in the case. By way of contrast, the *Crisafi* and *Cassandras* cases involved rapes by men who were strangers to the victims. In each of those cases the opinion lists the points of similarity between the charged offense and the prior offense which supported the inference that the known perpetrator of the earlier offense was the man who had committed the more recent crime.

In the *Malloy* case, the defendant was a playground director who was charged with lewd conduct committed in play with some boys whom he had escorted on a weekend trip. The defendant admitted being with the boys but claimed his intent was innocent. Evidence of his prior conduct was held admissible because it was relevant to the issue of intent. The opinion also says that the evidence was relevant as showing "common design," apparently overlooking the fact that the identity of the defendant was not in issue.

Both the *Malloy* case (at p. 233) and the *Cassandras* case (at p. 279) carry the intimation that when the defendant pleads not guilty, he necessarily places in issue his intent and his identity; and thus proof of prior offenses automatically becomes admissible by reason of the plea. If this were the law then proof of prior acts similar to the crime charged would be admissible in every case. The principle of exclusion, established by case law and supported by the text writers, would have no place. In the simplest burglary case the People could offer evidence of prior burglaries or prior thefts as circumstantial evidence of the defendant's intent to steal. But this is not the rule. The test of admissibility requires a pragmatic view of the evidence. Where, as in the present case, the record precludes any defense based upon mistaken identity or innocent intent, there is no justification for resorting to evidence which has such overwhelming probative force of the wrong kind.

The Attorney General also urges that the evidence of defendant's prior misconduct was admissible as rebuttal of a portion of the testimony of defendant's stepdaughter. The stepdaughter, testifying for the defense, said she lived in the house with her mother and stepfather (the defendant) for about a year when she was about 21 or 22 years of age. Her testimony includes the following:

"Q. During the time when your mother was away and you were in the residence, did he ever get out of line with you? A. No, sir.

"Q. Or used bad language or anything? A. No.

"Q. Or sexual language? A. No."

The Attorney General's argument is based upon *People* v. *Westek,* 31 Cal.2d 469, 475 [190 P.2d 9]. In that case the defendant, testifying on his own behalf, made the tactical error of asserting that he had never "at any time" committed any lewd act on any boy. The Supreme Court held that by this statement defendant had "opened the door" to cross-examination about specific prior acts, and to proof of such prior acts by the prosecution. The rebuttal testimony, showing lewd acts with other boys, was literally and directly apposite to the testimony of the defendant.

In the present case defendant did not open so wide a door. The testimony of the stepdaughter was only that defendant did not "get out of line" with her, and a literal rebuttal would have been to show that defendant had done something improper with her. Doubtless the testimony of the step-

daughter was offered to bolster the character of the defendant circumstantially, and thus was subject to rebuttal in the way other character evidence is rebutted. ██ Although evidence of good character may be rebutted by evidence of bad character, proof of the latter remains subject to the basic rule discussed above: that evidence of specific acts is generally not admissible to prove bad character. ██ The admission into evidence of the stepdaughter's testimony (whether properly received or not) should not be deemed to have "opened the door" to proof of defendant's conduct with other persons tending to show a propensity to molest children.

██ The testimony of the daughters unquestionably carried an impact which was prejudicial in the extreme. Without it the People's case rested entirely upon the uncorroborated testimony of the prosecutrix which was contradicted directly by the testimony of the defendant and by other witnesses. Defendant was entitled to have the issue of credibility determined without reference to the inadmissible reports of the other acts.

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 22, 1965.