[Crim. No. 10192.   In Bank.   Jan. 27, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. LAWRENCE W. ING, Defendant and Appellant.

---

Belli, Ashe, Gerry & Ellison, Melvin M. Belli and Robert L. Lieff for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, J.—Defendant was indicted on three counts charging rape of the prosecutrix to whom he allegedly administered an intoxicating narcotic or anesthetic substance that prevented her from resisting (Pen. Code, § 261, subd. 4).

He was found guilty by a jury on each count. A motion for a new trial was denied, and he appeals from the judgment.

The principal question presented concerns the breadth of the waiver of the privilege against self-incrimination by a defendant who takes the stand to testify in his own behalf. Defendant asserts that by testifying on direct examination regarding the offenses charged he did not waive his privilege against self-incrimination as to other offenses concerning which evidence had been introduced to show a common scheme or plan and that therefore errors were committed of the type condemned in *Griffin* v. *California*, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]. In addition he contends that the evidence is insufficient to support the verdict, that evidence was improperly admitted, that the prosecutor was guilty of misconduct, that error was committed with respect to the instructions to the jury, and that the trial court abused its discretion in denying his motion for a new trial.

S. M., the prosecutrix, testified to the following effect:

In October 1964 she went to the office of defendant, a doctor practicing in Sacramento, because she suspected she was pregnant and had been told that he would perform an abortion. She was then 17 years old. After examining her and having laboratory work performed, defendant informed her she was pregnant. She asked him "if something could be done about it," and he agreed to help her and told her to move close to his office because he would see her at irregular hours. A few days later she moved to a room near his office. On November 12, 1964, he gave her a shot that caused her to pass out, and upon awakening she felt "light-headed." On November 20 and 26, 1964, she returned to his office, and each time he gave her injections that made her feel dizzy and then had intercourse with her. On November 27 and 28 and December 4, 1964 (the dates charged in the indictment) defendant again had intercourse with her at his office after giving her shots.

The prosecutrix testified that when she received a shot she "just didn't care about anything," that she did not believe that she would have had intercourse with defendant had it not been for the shots because she "wouldn't be interested in someone like him," and that she never had intercourse with defendant when she was not under the influence of drugs. She further stated that the reason she had continued to see him was to get the shots, that she became more interested in the shots than in the abortion.

The owner of the rooming house where the prosecutrix lived on the dates of the alleged rapes testified that the prosecutrix

appeared to be "high" 70 or 80 percent of the time and did not act like a normal "19" year-old girl; that she would be either bleary-eyed and groggy or depressed and moody; that the pupils of her eyes were dilated; and that she wanted to sleep all the time, on occasions would fall asleep while talking, and sometimes slept 18 hours without waking. The witness, who as a student nurse worked with narcotic addicts, further testified that she thought the prosecutrix was on drugs. She also stated that while the prosecutrix lived with her defendant called 10 to 12 times asking for "Nancy," the name the prosecutrix gave him when she first went to his office.

The prosecution introduced the following evidence of other rapes to show a common scheme or plan:

I. A. testified: In 1949 defendant, after giving her an examination, told her that she was pregnant but that he would "take care of it." He gave her a shot of sodium pentothal at his office and then raped her while she was unconscious. A few days later he told her to return to his office so that he could remove some packing that had been inserted. When she returned, he gave her a shot despite her protests and again had intercourse with her while she was unconscious.

J. W. testified: In 1962, after being raped, she went to see defendant at his office to inquire about an abortion. He gave her a shot, which he said would abort her, and she became unconscious. When she awoke she was wearing no clothes and defendant, who was nude from the waist up, was holding her shoulders and speaking to her in endearing terms. She asked what he had done, and he laughed and said that if she had not been pregnant she would be now. By the way she felt she was aware that an act of intercourse had occurred.

C. K. testified: During several months in 1964 and 1965 she worked one day a week for defendant, and generally each time after work he gave her a shot and then had sexual intercourse with her at his office. She desired having intercourse with him but did not believe she would have voluntarily participated without the injections.

Defendant took the stand in his own behalf and denied the charges in the indictment. He testified that he saw the prosecutrix to determine if she was pregnant and subsequently treated her for an infection but that he never had sexual intercourse with her and never gave her any injections of narcotics or anesthetic substance that would render her unconscious. He stated that he gave her vitamin shots, some of

which contained amphetamin, and also sleeping pills and other medications.

On direct examination defendant testified solely with respect to the rapes charged and did not refer to the other offenses. On cross-examination the prosecution asked him a question relating to one of the other offenses, and an objection on the ground that the question was beyond the scope of direct examination was sustained. Thereafter, in the closing argument, the prosecution commented on defendant's failure to deny or explain the evidence of the other offenses, and the trial court gave an instruction on the effect of a defendant's failure to deny or explain evidence.[1]

■ Before the verdict in the instant case the United States Supreme Court had not rendered its decision in *Griffin* v. *California, supra,* 380 U.S. 609.[2] *Griffin* held that the California constitutional provision permitting comment on the failure of the defendant to testify (Cal. Const., art. I, § 13) violated the Fifth Amendment privilege against self-incrimination made applicable to the states in *Malloy* v. *Hogan,* 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489]. *Griffin* further declared that ''the same standards must determine whether an

---

[1]The instruction read: ''It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely on his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, he does not testify or if, though he does testify, he fails to deny or to explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those favorable [*sic*] to the defendant are the more probable. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain any certain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.

''In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on Defendant's part will supply a failure of proof by the People so as to support by itself a finding against him on any such essential element.''

[2]The *Griffin* rule is applicable to cases pending on direct appeal at the time it was announced. (See *Tehan* v. *Shott,* 382 U.S. 406, 409, fn. 3 [15 L.Ed.2d 453, 86 S.Ct. 459]; *Johnson* v. *New Jersey,* 384 U.S. 719, 732 [16 L.Ed.2d 882, 86 S.Ct. 1772].)

accused's silence in either a federal or state proceeding is justified.'' (See also *Malloy* v. *Hogan, supra,* at p. 11.) In *Griffin* the defendant had not taken the stand, whereas here defendant testified in his own behalf, and it is necessary to consider to what extent he thereby waived his privilege against self-incrimination.

Under federal decisions a defendant who takes the stand and testifies in his own behalf waives his Fifth Amendment privilege against self-incrimination at least to the extent of the scope of relevant cross-examination. (*Johnson* v. *United States,* 318 U.S. 189, 195 [87 L.Ed. 704, 63 S.Ct. 549]; *Caminetti* v. *United States,* 242 U.S. 470, 494 [61 L.Ed. 442, 37 S.Ct. 192]; *Powers* v. *United States,* 223 U.S. 303, 314-316 [56 L.Ed. 448, 32 S.Ct. 281]; *Sawyer* v. *United States,* 202 U.S. 150, 165-166 [50 L.Ed. 972, 26 S.Ct. 575]; *Fitzpatrick* v. *United States,* 178 U.S. 304, 314-316 [44 L.Ed. 1078, 20 S.Ct. 944]; *Ziegler* v. *United States,* 174 F.2d 439, 446-447; *Branch* v. *United States,* 171 F.2d 337, 338; *Carter* v. *United States,* 19 F.2d 431, 434; see *Brown* v. *United States,* 356 U.S. 148, 154 [2 L.Ed.2d 589, 78 S.Ct. 622, 72 A.L.R.2d 818]; *DeRose* v. *United States,* 315 F.2d 482, 487.) It matters not that the defendant's answer on cross-examination might tend to establish his guilt of a collateral offense for which he could still be prosecuted. (*Johnson* v. *United States, supra,* 318 U.S. 189, 192 et seq.; *Carpenter* v. *United States,* 264 F.2d 565, 569; see McCormick on Evidence (1954), p. 275.)

Here, as previously stated, on direct examination defendant made a general denial of the rapes charged but did not refer to the other offenses. As we shall see, the other offenses were relevant to show a common scheme or plan and thus would tend to rebut defendant's testimony on direct examination. Cross-examination as to the other offenses would have been proper. (Cf. *Johnson* v. *United States, supra,* 318 U.S. 189, 191, 195-196; *Ray* v. *United States,* 255 F.2d 473, 475; *United States* v. *Bradley,* 152 F.2d 425, 426; *Ng Sing* v. *United States,* 8 F.2d 919, 920.) Accordingly, the prosecutor's comments on the defendant's failure to deny or explain the evidence of the other offenses and the court's instruction permitting the jury to draw an inference unfavorable to defendant from that failure did not violate his federal constitutional privilege against self-incrimination. Although the trial court's instruction was general in terms and permitted the jury to draw an inference unfavorable to defendant from his failure to deny or explain *any* matters within his knowl-

edge, no claim is made that there was any additional matter beyond the scope of relevant cross-examination that defendant failed to explain or deny.

Defendant contends that, even though his federal constitutional privilege against self-incrimination may have been waived, under California authorities he did not waive his state constitutional privilege against self-incrimination (Cal. Const., art. I, § 13) and that therefore the prosecutor's comments and the court's instruction concerning his failure to deny or explain evidence were improper. ■ The rule in this state is that the defendant by testifying in his own behalf waives his state constitutional privilege against self-incrimination only to the extent of the permissible scope of cross-examination. (Pen. Code, § 1323; *People* v. *Atchley,* 53 Cal.2d 160, 173-174 [346 P.2d 764]; *People* v. *Arrighini,* 122 Cal. 121, 126 [54 P. 591]; *People* v. *O'Brien,* 66 Cal. 602, 603 [6 P. 695]; *People* v. *Withers,* 73 Cal.App.2d 58, 60-61 [165 P.2d 945]; see Witkin, Cal. Evidence (1958) pp. 510-511; McBaine, Cal. Evidence Manual (1960) pp. 79-80.) Cross-examination of a defendant is limited to "matters about which he was examined in chief." (Pen. Code, § 1323.)

■ Where a defendant takes the stand and makes a general denial of the crime the permissible scope of cross-examination is very wide. (*People* v. *Tarantino,* 45 Cal.2d 590, 599 [290 P.2d 505]; *People* v. *Zerillo,* 36 Cal.2d 222, 228 [223 P.2d 223]; *People* v. *Renchie,* 217 Cal.App.2d 560, 564 [31 Cal.Rptr. 694]; *People* v. *Aquilante,* 208 Cal.App.2d 530, 536 [25 Cal.Rptr. 344].) In *Tarantino* the defendant on direct examination testified that he did not commit the crimes charged, and the prosecution, over objection, cross-examined him as to other, similar offenses to which he had not referred in his testimony in chief. This court rejected a contention that the cross-examination was improper and stated that "The cross-examination here was directed primarily to matters implicit in Tarantino's general denial, i.e., his purpose, and motive, his general plan and scheme."

■ Since in the present case defendant on direct examination made a general denial of the offenses charged, cross-examination concerning the other offenses would have been proper. Defendant thus waived his state constitutional privilege against self-incrimination with respect to the collateral offenses, and comment and instruction on his failure to deny them were not improper.

Defendant appears to believe that cross-examination as to

the collateral offenses would have been improper under *People v. Crisafi*, 187 Cal.App.2d 700, 707 [10 Cal.Rptr. 155]. *Crisafi* stated that the court properly refused the prosecutor the right to cross-examine the defendant about a prior rape inasmuch as the matter was not gone into on his direct examination. However, the opinion does not set forth the defendant's testimony on direct examination, and it does not appear whether the defendant on direct examination made a general denial of the offenses charged.

■ There is no merit to defendant's contention that the evidence is insufficient to support the verdict.

■ Defendant asserts that the trial court erroneously admitted the testimony of the three women concerning the other offenses. We do not agree. It appears from the testimony of the women and of the prosecutrix that in each instance the woman saw defendant at his office as a patient, defendant gave her one or more shots and then had intercourse with her, and she would not have had intercourse with him had she not been under the influence of the drugs. In view of the striking similarities between the other offenses and the ones charged the evidence was relevant on the question of a common scheme or plan to commit rape and was properly admitted. (*People v. Whitehorn*, 60 Cal.2d 256, 262-263 [32 Cal.Rptr. 199, 383 P.2d 783]; *People v. Sylvia*, 54 Cal.2d 115, 119-120 [4 Cal.Rptr. 509, 351 P.2d 781]; *People v. Wojahn*, 169 Cal.App.2d 135, 146-148 [337 P.2d 192]; *People v. Sullivan*, 96 Cal.App.2d 742, 744 et seq. [216 P.2d 558]; *People v. Cassandras*, 83 Cal.App.2d 272, 279-282 [188 P.2d 546].) ■ The fact that one of the women was raped in 1949 affected the weight of the evidence rather than its admissibility. (*People v. Hernandez*, 209 Cal.App.2d 33, 40 [27 Cal.Rptr. 640]; *People v. Kearns*, 149 Cal.App.2d 113, 121 [307 P.2d 1015]; *People v. Burns*, 109 Cal.App.2d 524, 538 [241 P.2d 308, 242 P.2d 9].)

■ Defendant further asserts that his motion to suppress C.K.'s testimony on the ground that her name was obtained by an illegal search was erroneously denied by the trial court. However, conflicting evidence was introduced on the matter, and, since there was substantial evidence that her name was lawfully obtained, the trial court's ruling must be sustained.

■ The trial court admitted, over objection, a tape-recorded conversation between defendant and the prosecutrix, and defendant argues that this was error because he was not advised of his rights to counsel and to remain silent. The

police, knowing that defendant intended to telephone the prosecutrix on December 8, 1964, went to her home that day and, when defendant called her, made a tape-recording of the conversation. At the time of the conversation a complaint had been filed charging defendant with rape of the prosecutrix and the police had a warrant for his arrest. After the conversation he was taken into custody and was later indicted. Since he was not in custody at the time of the conversation he cannot successfully challenge the admissibility of the conversation on the basis of *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. (*Ballard* v. *Superior Court,* 64 Cal.2d 159, 167-171 [49 Cal.Rptr. 302, 410 P.2d 838].) *Ballard* points out that custody is ''a necessary factor in the advent of the prearraignment accusatory stage.'' Whether or not the rules in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 160, 10 A.L.R.3d 974], apply to a case in which, as here, the trial was before that decision, they are not applicable in the present case because defendant's statements were not ones ''stemming from custodial interrogation of the defendant.'' (384 U.S. at p. 444.)

Defendant's claim that comments by the prosecutor during his argument resulted in a miscarriage of justice cannot be sustained. In several instances no objection was made at the trial, and defendant may not now complain since any harmful effect of the remarks could easily have been removed by an instruction to disregard them. (*People* v. *Seiterle,* 59 Cal.2d 703, 710 [31 Cal.Rptr. 67, 381 P.2d 947].) In the other instances it is clear that the comments did not constitute prejudicial error. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

The trial court refused to give an instruction requested by defendant to the effect that therapeutic abortions may lawfully be performed when necessary to preserve the patient's life and that the jury should disregard any implication of wrongdoing which might have arisen from the fact that he performed a therapeutic abortion. Defendant testified that in 1958 he performed a therapeutic abortion. It is apparent that the refusal to give the instruction was not prejudicial error. (Cal. Const., art. VI, § 13; *People* v. *Watson, supra,* 46 Cal.2d 818, 836 [299 P.2d 243].)

In support of a motion for a new trial, made on the

ground of newly discovered evidence, defendant presented (1) an affidavit by his attorney stating that he had just been advised that defendant was in the Hawaiian Islands on one of the dates that I. A. testified he raped her in Sacramento and (2) an affidavit by defendant stating that he did not discover the dates he was in the Hawaiian Islands until after the verdict was rendered. To warrant the granting of a new trial on the ground of newly discovered evidence it must appear, among other things, that the party could not with reasonable diligence have discovered and produced the evidence at trial and that the evidence be such as to render a different result probable on retrial of the cause. (*People* v. *Arguello*, 61 Cal.2d 210, 214 [37 Cal.Rptr. 601, 390 P.2d 377]; *People* v. *Williams*, 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353]; *People* v. *McGarry*, 42 Cal.2d 429, 433 [267 P.2d 254].) Neither of these requirements was met here.

Defendant also presented in support of his motion for a new trial on the ground of newly discovered evidence (1) tape-recorded conversations between his wife and C.K. in which C.K. made statements indicating she had not had sexual relations with defendant and lied when she testified to the contrary and (2) affidavits by a Mr. and Mrs. Schmidt stating that C.K. told them she had not had sexual relations with defendant. The statements by C.K. to defendant's wife and the Schmidts were made after the verdict. A detective called by the prosecution testified that on a date after C.K. made those statements she said that she had had sexual relations with defendant. C.K. was not called to testify, and no affidavit by her was presented. It is clear that the matters presented by defendant were not such as to render a different result probable on retrial, and the trial court did not abuse its discretion in denying the motion.

Other contentions by defendant are without merit and need not be discussed.

The judgment is affirmed. The order denying a new trial is not appealable (Pen. Code, § 1237; *People* v. *King*, 60 Cal.2d 308, 309 [32 Cal.Rptr. 825, 384 P.2d 153]), and defendant's appeal therefrom is dismissed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Peek, J.,* concurred.

Appellant's petition for a rehearing was denied February 21, 1967.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.