[Crim. No. 4135. Third Dist. Mar. 2, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DON JEAN COVERT, Defendant and Appellant.

Frederick H. Ebey, under appointment by the Court of Appeal, and Grunsky & Pybrum for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Arnold O. Overoye, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—A jury found defendant guilty of an act of incest with his daughter. He appeals from the judgment. Primary question on appeal is the propriety of evidence of similar sexual activity between the defendant and an older daughter.

The prosecution's case consisted of the testimony of the 16-year-old prosecutrix and her 19-year-old married sister. Each described parallel histories of years of sexual molestation by their father, culminating in acts of copulation. These activities took place in the family home. All three were present during some of these events. Both girls described occasions of submission to their father's threats of physical harm. On the night of the charged offense, the defendant's wife (stepmother of the girls) was in the hospital. On that night, the prosecutrix testified, she submitted to her father at knife-point.

Defendant took the stand. His defense consisted of an alibi, in which he was corroborated by his brother. The defense elicited evidence that the prosecutrix had engaged in unruly behavior and had become vindictive because defendant and his wife had subjected her to disciplinary measures. On cross-examination defendant denied misconduct with the prosecuting witness. The defense did not attack the testimony of the elder daughter.

█ California decisions exclude evidence of similar offenses which is relevant only to prove the defendant's bad character, that is, his criminal disposition, because its probative value is outweighed by its prejudicial effect. (*People* v. *Westek*, 31 Cal.2d 469, 476 [190 P.2d 9]; additional cases cited Witkin, Cal. Evidence (2d ed. 1966) p. 299; see 1 Wigmore, Evidence (3d ed., 1940) pp. 642-646; cf. Cal. Evid. Code, § 1101, applicable to cases tried in 1967 and thereafter; Cal. Evidence Code Manual (Cont.Ed.Bar) pp. 205-206.) The general prohibition is tempered by numerous exceptions.

█ The concept underlying these exceptions is authoritatively described in *People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924]: "It is settled in this state, however, that except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the

defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a simple design or not.' "

As applied to sex offenses, the rule had recent expression in *People* v. *Ing*, 65 Cal.2d 603 [55 Cal.Rptr. 902, 422 P.2d 590], decided January 27, 1967. The defendant in that case was a doctor, charged with rape through administering narcotics. After the prosecutrix testified, three women related similar offenses. Each testified that she had seen the defendant at his office as a patient, that he gave her one or more injections and then had intercourse with her and that she would not have had intercourse with him had she not been under the influence of drugs. The Supreme Court stated (65 Cal.2d at p. 612): "In view of the striking similarities between the other offenses and the ones charged the evidence was relevant on the question of a common scheme or plan to commit rape and was properly admitted. (*People* v. *Whitehorn*, 60 Cal.2d 256, 262-263 [32 Cal.Rptr. 199, 383 P.2d 783]; *People* v. *Sylvia*, 54 Cal.2d 115, 119-120 [4 Cal.Rptr. 509, 351 P.2d 781]; *People* v. *Wojahn*, 169 Cal.App.2d 135, 146-148 [337 P.2d 192]; *People* v. *Sullivan*, 96 Cal.App.2d 742, 744 et seq. [216 P.2d 558]; *People* v. *Cassandras*, 83 Cal.App.2d 272, 279-282 [188 P.2d 546].) The fact that one of the women was raped in 1949 affected the weight of the evidence rather than its admissibility. (*People* v. *Hernandez*, 209 Cal.App.2d 33, 40 [25 Cal.Rptr. 640]; *People* v. *Kearns*, 149 Cal.App.2d 113, 121 [307 P.2d 1015]; *People* v. *Burns*, 109 Cal.App.2d 524, 538 [241 P.2d 308, 242 P.2d 9].) "

In the present case the prosecution offered the sister's testimony and the court received it on the theory that it evidenced a common scheme or plan. The California decisions do not clearly indicate whether *common scheme or plan* is an independent fact in issue or, on the contrary, a subordinate objective of proof, whose relevance depends upon the presence of some other actual issue, such as mistaken identity or claimed innocent intent.[1] Here, where the defense had not commenced presentation of its case at the time the prior offenses were offered, no such issue had yet appeared.

---

[1] There is a distinction between facts in issue (*facta probanda*) and subordinate facts (*facta probantia*) which tend to prove facts in issue. In classic parlance, plan and scheme are *facta probantia*, not facts in issue. (J. Stone, *Exclusion of Similar Fact Evidence: America*, 51 Harv. L.Rev. 988, 1026n, cited in McCormick on Evidence, p. 328n.

On this score there is a wide divergence among the California decisions considering admissibility of repeated sex offenses. A number of decisions adopt the view that *common plan or scheme* in the commission of repeated sex offenses with different persons is not an independent objective of proof; that some other disputed issue must be raised before the common plan or scheme is relevant; that if common plan or scheme is irrelevant (i.e., having no purpose other than proof of criminal disposition), neither is evidence of prior offenses offered to prove it. (*People* v. *Anthony*, 185 Cal. 152, 157 [196 P. 47] (disapproved on other grounds, *People* v. *Lucas*, 16 Cal.2d 178, 182 [105 P.2d 102, 130 A.L.R. 1485]); *People* v. *Baskett*, 237 Cal.App.2d 712, 717-719 [47 Cal.Rptr. 274]; *People* v. *Buchel*, 141 Cal.App.2d 91, 96 [296 P.2d 113]; *People* v. *Huston*, 45 Cal.App.2d 596, 597 [114 P.2d 607]; *People* v. *Asavis*, 22 Cal.App.2d 492, 494 [71 P.2d 307].[2]

Our present defendant relies heavily on these decisions, particularly *People* v. *Baskett, supra.* There the defendant took the stand to deny the charge of lewd conduct with his granddaughter. In rebuttal the prosecution called the defendant's two daughters, who testified that their father had engaged in similar conduct with them years earlier. The appellate court reversed the conviction, declaring the evidence of similar offenses inadmissible. The *Baskett* opinion might be summarized thusly: There was no evidence of a common plan in the sense of a single scheme to perform these separate acts; in its other sense "common plan" describes *modus operandi* and provides a means for identifying the defendant as the perpetrator of the crime, provided that identity is in issue; furthermore, it may negative a claim of innocent intent, provided the defendant makes that claim; since Baskett had simply denied the crime and claimed neither mistaken identity nor innocent intent, evidence of his earlier offenses proved nothing except his criminal disposition, hence was inadmissible.

Antedating *People* v. *Ing, supra,* and in contrast to the *Baskett* and similar decisions, is a group of cases avowedly or implicitly embracing the position that "common plan or

---

[2] To these cases should be added *People* v. *Cramer** (Cal.App.) 55 Cal.Rptr. 701, Jan. 5, 1967), a split decision. At this writing a petition for hearing in the *Cramer* case is pending in the State Supreme Court.

*A hearing was granted by the Supreme Court on February 28, 1967. The final opinion of that court is reported in 67 Cal.2d —— [60 Cal.Rptr. 230, 429 P.2d 582].

scheme'' is a fact in issue, tending to prove commission of the sex crime charged without apparent regard for the specific issues raised in the trial: *People* v. *Whitehorn* (1963) 60 Cal. 2d 256, 262-263 [32 Cal.Rptr. 199, 383 P.2d 783]; *People* v. *Sylvia* (1960) 54 Cal.2d 115, 119-120 [4 Cal.Rptr. 509, 351 P.2d 781]; *People* v. *Minkowski* (1962) 204 Cal.App.2d 832 [23 Cal.Rptr. 92]; *People* v. *Malloy* (1962) 199 Cal.App.2d 219, 231-233 [18 Cal.Rptr. 545]; *People* v. *Crisafi* (1960) 187 Cal.App.2d 700, 707 [10 Cal.Rptr. 155]; *People* v. *Wojahn* (1959) 169 Cal.App.2d 135, 147 [337 P.2d 192]; *People* v. *Wertz* (1956) 145 Cal.App.2d 395, 399 [302 P.2d 613]; *People* v. *Sullivan* (1950) 96 Cal.App.2d 742, 745-747 [216 P.2d 558]; *People* v. *Cassandras* (1948) 83 Cal.App.2d 272 [188 P.2d 546].

As the admissibility concept is described in *People* v. *Peete, supra,* the issues arising in the particular trial determine the relevance, hence the admissibility, of evidence of prior offenses. One writer puts it: ''There is no fixed category . . . of relevant facts in proof of which other crimes may be shown as circumstantial evidence.'' (Witkin, Cal. Evidence (2d ed. 1966) p. 300.) Section 1101, subdivision (b), of the new Evidence Code lists some examples of trial issues which unlock the door to such proof, such as ''motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .''[3]

''Common scheme or plan'' and similar phrases supply a frequent ticket of admissibility. Unfortunately the ticket has often permitted admittance without heed to the actual issues presented to the prosecution by the elements of the crime or by the claims of the defense. Several decisions point out that *scheme* or *plan* are words of several meanings. They may refer, first, to a plot to commit both the offense charged and the prior offense offered in evidence; second, to *modus operandi,* a characteristic method employed by a defendant in the performance of repeated criminal acts. (*People* v. *Baskett, supra,* 237 Cal.App.2d at p. 717; *People* v. *Chambers,* 231 Cal.App.2d 23, 30-31 [41 Cal.Rptr. 551]; see also *People* v. *Ollado,* 246 Cal. App.2d 608, 618 [55 Cal.Rptr. 122] (dissent).) Professor Wigmore points out that where intent is not in issue there must exist not merely a similarity of results, but ''*such a concurrence of common features that the various acts are*

---

[3] A more detailed listing of occasions establishing relevancy of evidence of other offenses appears in McCormick on Evidence, section 157, pages 327-331.

*naturally to be explained as caused by a general plan of which they are the individual manifestations."* (2 Wigmore on Evidence (3d ed.) p. 202; see also p. 266.) Thus, as Wigmore employs these words, *plan* or *scheme* connote not *modus operandi* or method, but a single conception or plot. On the other hand, a number of California decisions dealing with sex offenses seemingly employ the phrase only to refer to a characteristic method. (*People* v. *Ing, supra,* 65 Cal.2d at p. 612; *People* v. *Malloy, supra,* 199 Cal.App.2d at p. 230; *People* v. *Crisafi, supra,* 187 Cal.App.2d at p. 707; *People* v. *Cassandras, supra,* 83 Cal.App.2d at p. 279.)

The decisions illustrate at least two other meanings of the *common plan* notion. On occasion it appears in the context of the defendant's earlier sexual activity with the prosecuting witness, offered to show the defendant's lewd disposition toward that very person. (*People* v. *Sylvia, supra,* 54 Cal.2d at pp. 119-120; *People* v. *LaMantain,* 89 Cal.App.2d 699, 701 [201 P.2d 598].) Carefully regarded, such cases may not be a key to admissibility when several victims testify. (See McCormick, *op. cit. supra,* pp. 328-329.)

A fourth incarnation of the *common plan* notion appears in *People* v. *Peete, supra,* 28 Cal.2d at pages 316-319, involving the defendant's separate but similar schemes to acquire property by murder. In that case common plan did not form an independent ground of admissibility, but was relevant to show the defendant's motive. Nevertheless, the *Peete* case has been cited as authority for evidence of uncharged sex offenses as proof of *design,* seemingly without regard to motive or other specific issues posed in the trial (e.g., *People* v. *Sylvia, supra,* 54 Cal.2d at p. 119; *People* v. *Sullivan, supra,* 96 Cal. App.2d at p. 746).

Part, but only part of the divergence is explainable with reference to the posture of the trial at the point when evidence of past crimes is offered. *People* v. *Westek, supra,* 31 Cal.2d at page 476, demonstrates that the doorway may remain shut during the prosecution's case in chief but swing open on rebuttal, after the defense has raised such issues as innocent intent.

 The problem of admissibility in the present case is settled by *People* v. *Ing, supra.* In *Ing,* proof of a common scheme or plan was viewed as an independent ground of admissibility in a prosecution charging a specific act of rape by drugs; here, the charge involves a specific act of incest by threat, a crime distinguished chiefly in terms of the familial

relationship between accused and accuser. In *Ing,* as here, the witnesses were victims other than the prosecutrix. In *Ing,* as here, the separate offenses were not manifestations of a single plot but were conceived *ad hoc.* In *Ing,* as here, the evidence was offered as part of the prosecution's case in chief, before the defense had posed special issues. In *Ing,* as here, there was no issue of mistaken identity or innocent activity but only a denial of the offense.

We have felt impelled to evaluate the *Ing* pronouncement, partly because of its brevity, partly because we have been unable to reconcile it with *People* v. *Anthony, supra,* 185 Cal. 152, and allied decisions permitting common plan evidence only to meet specific issues. A case law precedent may present only a condensed statement of doctrine. While paying such a statement the allegiance demanded by *stare decisis,* the deciding tribunal owes a concurrent responsibility to the case at hand. (See Llewellyn, The Common Law Tradition: Deciding Appeals, pp. 121-122.) There are sound reasons of policy and logic for viewing *common scheme or plan* as the occasion for admissibility in most of these sex cases. The offense almost always occurs in private. The only direct witnesses are the prosecuting witness and the defendant. Although circumstantial evidence supplies occasional corroboration, conviction usually hinges upon the credibility of the prosecuting witness. In this kind of case beyond any other, the defendant's plea of innocence challenges the credibility of the alleged victim. The challenge inheres in the very nature of the contest and usually demands an answer long before the prosecution's turn for rebuttal.[4] ■ A minimal defense, even when the defendant elects not to testify, demands that the alleged victim be accused of falsehood, spite or delusion. ■ Regardless of its own thinness, the defense is entitled to an instruction telling the jury to view the prosecuting witness' testimony with caution. (*People* v. *Nye,* 38 Cal.2d 34, 40 [237 P.2d 1] ; *People* v. *Sutton,* 224 Cal.App.2d 708, 710 [37 Cal.Rptr. 23].) ■ Standing alone, the implicit challenge to the credibility of the prosecuting witness creates relevance for evidence of similar sex offenses upon other persons.[5]

---

[4] Cf. Evid. Code, § 785: ''The credibility of a witness may be attacked or supported by any party, including the party calling him.''

[5] At this point also, there is room to challenge the accuracy of statements prohibiting evidence of prior offenses when directed at proof of *criminal disposition.* Where successive sexual acts are inflicted upon a single victim, the courts have received the evidence to show *lewd disposition* or inclination toward the prosecuting witness. (*People* v. *Sylvia,*

 Our examination of the record eliminates any question of adequate similarity. The offenses described by the 19-year-old sister during her childhood and adolescence had identical character with those inflicted upon the 16-year-old prosecuting witness. Evidence of defendant's sexual activity with the 19-year-old sister was properly admitted in evidence.

Relative to this same evidence, the court on one occasion informed the jury that such evidence was not admitted to prove the defendant a bad man; on another, that the sister's testimony was admitted upon ''the question whether or not there was a common scheme and design on the part of this man in relation to his daughters'' plus other factors which the court would discuss more fully in the course of its formal instructions. Among the formal instructions was the following: ''Evidence was offered in this case for the purpose of showing that the defendant committed offenses other than the one of which he is accused and for which he is on trial in this action, namely, that he engaged in improper sexual activity with his daughter [sister of the prosecuting witness]. Such evidence was received for a limited purpose only: not to prove distinct offenses or continual criminality but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty of the crime charged against him in this action.

''You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case.

''If you find that the evidence of the alleged offenses against [the elder sister] do not have any bearing on the question whether the defendant is innocent or guilty of the crime charged in this case, you must put from you mind and

*supra,* 54 Cal.2d at p. 120; *People* v. *Cox,* 102 Cal.App.2d 285, 287 [227 P.2d 290]; *People* v. *Jewett,* 84 Cal.App.2d 276, 279 [190 P.2d 330]; *People* v. *LaMantain, supra,* 89 Cal.App.2d at p. 702.) In a sex offense case the difference between *criminal* disposition and *lewd* disposition disappears. Nor is there any line dividing the defendant's lewd disposition as it manifests itself in repeated acts upon one or several persons. Attempts to distinguish between *design* to achieve the forbidden sexual objective and *disposition* to do it only cloak the relevance problem in verbalisms. At the root of the matter, it may be suggested—and the fundamental occasion for relevance—is the defendant's uncontrolled disposition or propensity to gratify his sexual urge in the manner denounced by the statute. Nevertheless, California decisions to date have verbalized the admissibility problem in terms of the defendant's sexual propensities only when successive acts with one person, the prosecuting witness, are involved. (Contrast McCormick, *op. cit. supra,* pp. 328-329, with 2 Wigmore, *op. cit. supra,* pp. 267-269.)

completely disregard all evidence relating to [the elder sister]."

Defendant challenges the last quoted instruction. Essentially, the instruction was an altered version of the first paragraph of Instruction 33, California Jury Instructions, Criminal (CALJIC). The CALJIC instruction consists not only of that paragraph, but a series of additional qualifications, telling the jury that "the value, if any, of such evidence depends on whether or not it tends to show" one or several of such elements as identity, motive, plan or design. The trial court erred in eliminating all these qualifications. Standing alone, the instruction removed all practical limitation upon the testimony of the elder sister, telling the jury that it was received on the broad issue of guilt or innocence. The instruction allowed the jurors to apply the evidence as they wished. Before considering whether the erroneous instruction was prejudicial, we describe defendant's final assignment of error.

Defendant charges the district attorney with prejudicial misconduct in eliciting the fact that he had pleaded guilty to a misdemeanor charge arising from sexual misconduct with the elder daughter. The claimed misconduct occurs twice. Before placing defendant on the stand, the defense had called a deputy probation officer, who testified that he had visited defendant's home on a number of occasions and had not received any complaints of mistreatment from the prosecuting witness. On cross-examination the prosecution elicited the fact that defendant had been on probation for the crime of child molestation (a misdemeanor) arising out of sexual misconduct with the elder daughter. Eventually defendant's trial counsel objected and the objection was sustained.

Later defendant was on the stand. His direct testimony consisted of his alibi and a charge of spite against the prosecutrix. He was silent as to his relationship with the elder daughter. On cross-examination the district attorney elicited a denial of sexual activity with the prosecutrix, followed by an admission that defendant had pleaded guilty to the misdemeanor charge of molesting the older girl. There was no objection at that point from defendant's trial counsel, no assignment of misconduct or request for a jury admonition.

In making these inquiries, the prosecutor was venturing into plainly forbidden territory. Neither before nor after defendant took the stand could the prosecution impeach him by evidence of particular wrongful acts or by evidence of

a misdemeanor conviction. (*People* v. *Blalock,* 238 Cal.App.2d 209, 224 [47 Cal.Rptr. 604]; Witkin, Cal. Evidence (2d ed. 1966) p. 1141.) He had not even taken the stand when the probation officer testified. In bringing out the misdemeanor conviction during the probation officer's cross-examination, the prosecutor did nothing to reveal bias or inaccuracy on the part of the witness, elicited no probative fact whatsoever and achieved only defendant's vilification as a convicted sex offender. Later, in his direct testimony, defendant said nothing of the older girl, neither admitting nor denying her testimony. In the course of his cross-examination, the prosecution brought forth his admission that he had pleaded guilty, that is, he had admitted molesting the elder daughter. The evidence of his criminal record flew wide of any target presented by defendant's direct testimony, revealed no criminality not already in evidence and resulted in additional vilification.

Whether these prosecution sallies were due to deliberation or to unawareness of the rules of criminal evidence, the result is a clouded record on appeal. Defendant's trial counsel neither objected nor sought to have the errors ameliorated by jury admonition. ▮ Where the evidence is closely balanced, and the misconduct has contributed materially to the verdict, a miscarriage of justice results and article VI, section 13,* of the State Constitution requires reversal despite defense failure to object. (*People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Sorenson,* 231 Cal.App.2d 88, 92-93 [41 Cal.Rptr. 657].)

▮ At length and in detail the elder sister had described her father's incestuous conduct with her. Like the prosecutrix, she testified to occasions when the father had indulged himself in the presence of both girls. At no point did the defense impeach the elder sister or deny her story. Her testimony was properly in the case as evidence of defendant's plan or design to use his daughters to satisfy his sexual desires. So compelling was the showing of design, so strongly did it corroborate the prosecutrix's testimony, that it could not but color and sway the jury's consideration of guilt or innocence. The prosecution's improper extraction of his misdemeanor conviction placed a minor weight—however illegitimate—on scales heavily laden with undenied evidence of defendant's relations with his elder daughter. With the scales so heavily tilted against it the defense was destined for de-

---

*Reporter's Note: Amendment adopted November 8, 1966.

feat unless it could (a) produce a holeproof alibi, or (b) shake the elder sister's story. The alibi was anything but holeproof, revealing no lack of opportunity to commit the charged offense and dwindling to a claim that defendant had arrived home after midnight instead of several hours earlier, as the prosecutrix testified. There was no attempt to shake the elder sister's testimony or her credibility. The evidence was not closely balanced and the misconduct did not contribute materially to the verdict.

The challenged instruction is similarly innocuous. Because of its broadness we cannot assume that the jury coupled it with the court's earlier admonitions limiting the purpose of evidence of sexual activity with the elder sister. Yet, even had the jury received and adhered punctiliously to an instruction limiting this evidence to proof of an incestuous plan or design, this same evidence—untouched by the defense —would powerfully corroborate the prosecutrix's story and tend to demonstrate commission of the specific act charged. Limited by a proper instruction, the older girl's testimony would have had no less impact than it did. As we view the record, there is no reasonable probability and no reasonable possibility that absence of either or both these errors would have resulted in acquittal. The question of guilt or innocence was not close. Thus the errors, separately or together, do not justify reversal. (*People* v. *Talley,* 65 Cal.2d 830 [56 Cal. Rptr. 492, 423 P.2d 564], filed Feb. 17, 1967; *People* v. *Watson,* 46 Cal.2d 818, 836-837 [299 P.2d 243].)

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied March 28, 1967, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1967.