[Crim. No. 29887. Second Dist., Div. Two. Aug. 1, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH CLARK FRITTS, Defendant and Appellant.

321

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Kent Richland and F. Elaine Easley, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, James H. Kline and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FLEMING, Acting P. J.**—A jury found appellant guilty of the following charges: Count I, committing a lewd and lascivious act upon M, his stepdaughter, a child under fourteen, between 1 May 1973 and 1 May 1974 (Pen. Code, § 288); counts II to IV, unlawful sexual intercourse with M. a female under 18, on 13, 14, and 15 September 1975 (Pen. Code, § 261.5); count V, committing a lewd and lascivious act upon S, his daughter, a child under 14, on 16 September 1975 (Pen. Code, § 288). The court instituted MDSO proceedings, found appellant to be a mentally disordered sex offender who could benefit from treatment in a state hospital, and committed him for placement in Patton State Hospital (Welf. & Inst. Code, § 6316). Appellant appeals the order of commitment, contending: (1) evidence of uncharged sexual misconduct with appellant's daughter C by a prior marriage and with another young girl

was erroneously admitted; (2) count I is defective as a matter of law in not specifying the exact date of the offense; (3) the court unduly restricted cross-examination of appellant's divorced wife and of the victim M.

Since appellant "wisely does not challenge the sufficiency of the evidence" (see *People* v. *Kazee* (1975) 47 Cal.App.3d 593, 594 [121 Cal.Rptr. 221]), we state the facts with appropriate brevity. Prior to the filing of charges appellant lived with his wife Janet, her daughter M by a former marriage, and two children of their own, one of whom was their daughter S. The family owned and operated a retail television sales store. M testified that during the period from 1 May 1973 to 1 May 1974, while she was 13 years old, she frequently worked in the store after school. On numerous occasions appellant, after closing the store, would take M into the back room, place a blanket on the floor, and have sexual intercourse with her. M could not recall the exact dates of any of the occurrences. She further testified, as charged in counts II through IV of the information, that on 13, 14, and 15 September 1975 appellant caused her to have sexual intercourse with him in their home at times when they were alone in the house. On September 16 Janet left her husband. Appellant picked up the children at school and brought them home, threatening to take them to Virginia if they tried to follow their mother. That night M escaped through a bedroom window and went to a neighbor, who assisted her in joining her mother. Later that same night, according to S, then 10 years old, appellant took S into his bed and attempted intercourse with her, but desisted when she cried and asked him to stop it. Thereafter Janet filed for divorce. On September 22 Janet took M to a doctor to determine if she were pregnant, because the girl had missed three periods, and in the doctor's office M for the first time told her mother that appellant had molested her. Later S came to the house where Janet and M were staying and after some questioning by Janet admitted similar molestation.

Appellant's daughter C by his first wife, seventeen years old at time of trial, testified to repeated acts of sexual molestation by appellant beginning when she was five or six years old. She also testified to suspicious indications of the relationship between appellant and M, such as finding M in appellant's bed. She further testified that one morning appellant got into bed with her when she was sleeping in the same bed with M, and after she resisted appellant's advances he "proceeded on to" M. C turned her back on what they were doing, but she heard M crying.

On numerous occasions when the girls were sleeping together, C would awake during the night to find M gone.

Another witness, Patricia, testified that when she was seventeen she was a temporary resident of appellant's household. One night appellant fondled her in bed but left when she threatened to call Janet.

Both M and S testified that appellant began making sexual advances to them at early ages (five to seven years old for M; seven or eight years for S), and in the case of M regular relations began at about age thirteen and continued nearly every other day until the breakup of the household in September 1975. M submitted and did not tell anyone because she was afraid of appellant's possible violence toward her; she had seen him strike her mother twice, once with a broom and once with his fist. S did not tell anyone about sexual advances because appellant told her not to. Daughter C had a "hunch" what was happening between appellant and M but could not bring herself to tell anyone.

Appellant denied ever having molested any of the alleged victims. He admitted striking his wife, as M had testified.

■ In our view C's testimony was admissible in evidence. Unquestionably, the part of her testimony that directly corroborated M's testimony about sexual molestation was admissible. Equally admissible was the part of her testimony that described the molestation of herself and M on the same occasion, for it would be impossible to testify about one without referring to the other. Arguable is her testimony about molestation by appellant at times and in places when M was not present. ■ We think such testimony admissible on two grounds:

(1) Her testimony tended to show a continuing plan or design on the part of the accused to use minor female members of his own household, his minor daughters and minor stepdaughter, to satisfy his sexual gratifications and wants. (See *People* v. *Cramer* (1967) 67 Cal.2d 126 [60 Cal.Rptr. 230, 429 P.2d 582]; *People* v. *Ing* (1967) 65 Cal.2d 603 [55 Cal.Rptr. 902, 422 P.2d 590]; *People* v. *Covert* (1967) 249 Cal.App.2d 81, 87-88 [57 Cal.Rptr. 220]; *People* v. *Kazee* (1975) 47 Cal.App.3d 593 [121 Cal.Rptr. 221].) In many respects the facts are analogous to those in *Ing*, where the molestation involved a specific class of persons (patients) in a specified location (doctor's office). At bench, the class of persons involved minor female members of appellant's household and the places of occurrence were his residence and place of business.

(2)—The testimony was also admissible under the theory of *People* v. *Covert, supra,* as evidence tending to buttress the credibility of M and S, minor witnesses who had been charged by the accused with fabricating the evidence against him. Where proof necessarily depends on the credibility of testimony of child witnesses about sexual acts performed in private, and where the accusations of misconduct are flatly denied by the accused, evidence of similar acts may be received on the issue of the credibility of the minor witnesses.

■ At bench, even if that part of C's testimony relating to appellant's acts of sexual molestation of C should be considered inadmissible (cf. *People* v. *Thomas**(Cal.App.) hearing granted), its admission was non-prejudicial beyond a reasonable doubt, in that it is not reasonably probable that in its absence the jury might have acquitted appellant. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13.) The testimony of the principal victim, M, was lengthy, detailed, and coherent. She was 16 at the time of trial, not a young child whose testimony might well be the product of fantasy. Her testimony was corroborated by those portions of C's testimony which had nothing to do with the independent molestation of C and which were clearly admissible; namely, C's testimony that M was missing from bed on many occasions at night and found once in appellant's bed, and her testimony as to appellant's conduct in bed with both girls. Additionally, we have the testimony of the younger victim, S, as to the offenses against her, and S's testimony about seeing appellant and M in bed together on one occasion. Accordingly, even without C's testimony that appellant sexually molested her, proof that appellant was guilty of the charges was overwhelming. (Cf. *People* v. *Crume* (1976) 61 Cal.App.3d 803, 811 [132 Cal.Rptr. 577].) It follows that the brief testimony of the temporary resident in the household, Patricia, about the fondling incident was equally nonprejudicial.

■ The charge that the lewd act in count I occurred between 1 May 1973, and 1 May 1974, did not amount to error. The precise date of the offense need not be pleaded if not material. (Pen. Code, § 995; *People* v. *Wrigley* (1968) 69 Cal.2d 149, 155 [70 Cal.Rptr. 116, 443 P.2d 580].) While *People* v. *Creighton* (1976) 57 Cal.App.3d 314 [129 Cal.Rptr. 249], holds it erroneous, when the prosecution is proving a habitual pattern of numerous violations and the victim cannot recall the exact dates, to instruct the jury it is not necessary to prove commission of the crime on a

*Reporter's Note: Hearing granted February 23, 1977 (Crim. 19836).

particular date, that instruction was not given here. The correct instruction under *Wrigley* is that the accused may be found guilty if he committed the alleged offense at any specific time within the period charged. Since appellant's alibi defense was not specific as to dates but total, in that he made a blanket denial of ever having molested his stepdaughter, he was not prejudiced by the manner of charging in count I.

■ Appellant complains of restrictions on his cross-examination of Janet and M. He wished to ask Janet whether she had said she would use any means to prevent appellant's getting custody of the children; whether she had offered to drop charges if appellant would waive all custody rights and relinquish all community property to her; whether Janet had lost custody of a daughter in a previous divorce and had said that she would never let it happen again; and whether Janet had locked him out of the store during divorce proceedings and refused to obey a court order to let him in. The foregoing evidence was sought to show motive for fabrication of the charges. The court permitted appellant's counsel to ask Janet about the loss of custody of one of her daughters and appellant was allowed to testify that Janet locked him out and had promised not to press charges if he signed everything over to her. The court refused, however, to permit any detailed inquiry into the conflicts of the divorce and property settlement, stating that the parties were not trying the divorce action. The familiar rule applicable here is that the trial court possesses broad discretion to keep cross-examination of a complaining witness in a sex offense case within reasonable bounds. (E.g. *People* v. *Pacheco* (1963) 220 Cal.App.2d 320, 324 [33 Cal.Rptr. 735].) That discretion was not abused here, for evidence of the bitterness of the divorce and property settlement was far afield from the issue of appellant's guilt on the criminal charges.

■ Additionally, appellant wished to question both Janet and M as to whether M had been having sexual relations with a boyfriend named Pete, whether she had been found to be pregnant at her September 22 visit to the doctor, and if so what the outcome of the pregnancy had been. The court correctly refused to allow questioning about M's sexual life or pregnancy. The attempt to impeach M by fishing for evidence of unchaste behavior was improper. (See, e.g., *People* v. *Pacheco, supra,* 220 Cal.App.2d at p. 323.) Such evidence possesses no direct probative value in relation to the charges at bench and is demeaning to the witness. (*People* v. *Brown* (1968) 262 Cal.App.2d 378, 383 [68 Cal.Rptr. 657]; *People* v. *Stratton* (1904) 141 Cal. 604, 607 [75 P. 166].) In a rape case

such evidence is generally inadmissible, and can only be introduced upon an adequate offer of proof of relevance (Evid. Code, § 782). In incest and child molestation the victim's sexual experience has no direct relevance to the issue, and the court correctly protected the victim from exploratory questioning in that area. Appellant's theory of tangential relevancy, that M had become pregnant by her boyfriend and had falsely accused appellant of molestation in order to divert attention from her own misconduct, was belied by the evidence. The trial court did not err in limiting cross-examination based on a theory of recent fabrication.

The judgment (order of commitment) is affirmed.

Compton, J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 28, 1977.